■ Mary Somoza et al., Respondents, v St. Vincent's Hospital and Medical Center of New York et al., Appellants, et al., Defendants. [596 NYS2d 789] —Order, Supreme Court, New York County (Helen Freedman, J.), entered September 24, 1991, which denied defendants-appellants' motion for summary judgment dismissing the complaint against them, affirmed, without costs.

The within action arises from the premature birth of twin girls to plaintiff Mary Somoza. The only issue on this appeal is the liability of defendant Dr. Dorothy Gutwein, a resident physician at defendant St. Vincent's Hospital and Medical Center of New York, and vicariously through her, the hospital itself. The facts that emerged on defendants-appellants' motion for summary judgment reveal that plaintiff had been admitted to the hospital on December 12, 1982 in the 29th week of her pregnancy upon her complaints of severe lower abdominal pain. She was admitted by and remained under the care of her private attending physician, defendant Dr. Velimir Svesko. Upon her admission to the hospital, plaintiff was examined by Dr. Gutwein, who, according to the notations she made on plaintiff's chart, independently formed the impression that plaintiff might be suffering from either left pyelone-

phritis, premature labor, or polyhydramnios. Dr. Gutwein recorded a written plan and orders requiring that plaintiff be hooked up to a fetal monitor and undergo a number of diagnostic tests, including a renal pelvic sonogram. Also on the date of admission, i.e., December 12, 1982, Dr. Svesko conducted an internal examination of plaintiff which revealed that her cervix was "patulous."

Plaintiff's sonogram revealed, *inter alia,* that plaintiff was suffering from polyhydramnios, or an increase of amniotic fluid, which created a risk of premature delivery. The results of the sonogram were so abnormal as to compel the radiologist to recommend a follow up sonogram. However, no such follow up was ordered. Instead, after plaintiff had had two days of bedrest, during which time she was seen by Dr. Gutwein, who noted on plaintiff's chart that the etiology of plaintiff's pain remained unclear and that the plan of treatment was continued hydration, observation and analgesia, Dr. Svesko conducted a second internal examination of plaintiff on December 14. According to the notations on plaintiff's chart, that pelvic examination revealed that the cervix had become "very high" and "short." Despite the abnormal sonogram and various findings on the physical examinations, Dr. Svesko decided to release plaintiff from the hospital on the next day because her pain had subsided. He orally conveyed this order to Dr. Gutwein sometime before her 7 A.M. rounds on December 15. According to Dr. Gutwein, she did not formulate an opinion as to the correctness of the decision to discharge since "[i]t wasn't my place to say one way or the other." Instead, pursuant to Dr. Svesko's instruction, on her early morning rounds Dr. Gutwein simply signed an order discharging plaintiff from the hospital and plaintiff left later that morning. At the time the discharge order was signed, the sonogram initially ordered had resulted in abnormal findings and, in addition, Dr. Gutwein was aware of the results of both of Dr. Svesko's internal examinations as well as of her own examinations and observations of plaintiff. Four days later, plaintiff returned to the hospital suffering severe pain and soon thereafter delivered the twins, who were diagnosed as suffering from cerebral palsy resulting from their premature birth.

Plaintiffs' complaint alleged, *inter alia,* that the premature birth and cerebral palsy were caused by the malpractice of the defendants in that they "failed to properly treat Mary Somoza for her pregnancy, failed to properly recognize, diagnose, and treat polyhydramnios, failed to properly and timely intervene, failed to heed the patient's signs, symptoms, history and

complaints, failed to obtain a proper informed consent [and] failed to obtain necessary and indicated medical experts' consultations".

Defendants Gutwein and St. Vincent's Hospital moved for summary judgment dismissing the complaint as against them on the grounds that neither the hospital nor its resident provided any independent treatment to plaintiff. In opposition to the motion, plaintiffs presented an affidavit by Dr. David Sherman, who stated that, based on his review of hospital records, he was able to conclude that plaintiff's abdominal pain, polyhydramnios and the breech presentation of one of the twins placed plaintiff at high risk for premature labor. Furthermore, the "very high" and "short" condition of the cervix on December 14, when seen in light of the "patulous" condition upon admission two days earlier, indicated that there was "uterine activity" and that "something was happening internally." He therefore concluded that, "the failure of the hospital staff to discharge without another physical examination in my opinion, with a reasonable degree of medical certainty, is a departure from good and accepted medical practice. The resident clearly had an obligation to examine even a private patient in the face of a changing cervix and not just to discharge her pursuant to some attending's order."

It is well established that, "[i]n the absence of an employment relationship, a hospital cannot be held legally responsible for the actions of a private physician attending his private patient so long as the hospital staff properly carries out the physician's orders" *(Hicks v Fraser Clinic,* 169 AD2d 558, 559). Based on this principle, defendants argue that they cannot be held liable for any malpractice involved in discharging plaintiff on December 15 without further examination as the discharge was ordered by her attending physician and Dr. Gutwein was merely following those orders in signing plaintiff out.

However, even where the action at issue has been ordered by a private physician, a hospital whose staff carries out that order may nevertheless be held responsible where the hospital staff knows, or should know, " 'that the doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders (see, generally, *Fiorentino* v. *Wenger,* 19 N Y 2d 407, 414-415).' " *(Christopher v St. Vincent's Hosp. & Med. Ctr.,* 121 AD2d 303, 306, *appeal dismissed* 69 NY2d 707, quoting *Toth v Community Hosp.,* 22 NY2d 255, 265, n 3.)

In this case, we find that the affidavit of plaintiff's expert

witness was sufficient to create a question of fact as to whether, in light of the symptoms exhibited by plaintiff during her internal examinations and other tests, the results of which were known by the resident physician, who had actively participated in caring for plaintiff throughout her hospital stay, plaintiff's release from the hospital was so clearly contraindicated by normal practice that ordinary prudence required further inquiry by Dr. Gutwein into the correctness of the discharge order. While the expert's affidavit is not couched in these precise terms, it is clear that particular terminology is not necessary where the substance of the affidavit is sufficient to raise a question of fact (*Christopher v St. Vincent's Hosp. & Med. Ctr., supra*).

Defendants also argue that summary judgment is warranted based on plaintiff's failure to present evidence that her release from the hospital on December 15 without further treatment was, as alleged, a proximate cause of the twins' premature birth.

On a motion for summary judgment dismissing a complaint, the defendant must come forward with evidentiary proof in admissible form in support of its defense sufficient to direct judgment in its favor as a matter of law (*Zuckerman v City of New York*, 49 NY2d 557, 562). If defendant meets that initial burden, in order to avoid summary judgment, plaintiff must present sufficient evidentiary proof to establish the existence of a material issue of fact (*supra*). On their motion in this case, defendants addressed themselves solely to their defense that they were not liable for the consequences of plaintiff's release from the hospital because it was ordered by her private physician. They presented no evidence, and, indeed, did not even argue, that plaintiff's release from the hospital on December 15 was not a proximate cause of the children's premature birth and therefore of the cerebral palsy. In light of defendants' choice not to address this issue on their motion, plaintiffs were not obligated to present evidence of a causal link in order to withstand summary judgment. Concur—Carro, J. P., Milonas, Ellerin and Wallach, JJ.

Kupferman, J., dissents in a memorandum as follows: I would grant summary judgment dismissing the complaint against the defendants, St. Vincent's Hospital and Medical Center of New York and Dr. Dorothy Gutwein.

The motion for summary judgment in this appeal does not involve the plaintiff's private attending physician. It concerns only the resident physician and vicariously through her the hospital.

It has been held that a hospital is not responsible for the acts of the private attending physician *(Fiorentino v Wenger,* 19 NY2d 407). Inasmuch as the hospital acts through its residents, neither the hospital nor the resident is liable for carrying out the orders of the patient's private attending physician *(Topel v Long Is. Jewish Med. Ctr.,* 55 NY2d 682).

It is not for the hospital to invade the area of the attending physician's competence and authority or overrule his orders of a direct and explicit nature *(Toth v Community Hosp.,* 22 NY2d 255).

It is the private physician who makes the decisions. This is clearly outlined in the Official Position Statements and Principles of Professional Conduct of the Medical Society of the State of New York (1992), under Guidelines for Attending Physicians and Residents (at 19C): "it is imperative to specifically indicate the authority and responsibility for decisions about treatment and management. Ethically and legally, the patient's freely selected attending physician possesses this authority and responsibility. Such action will strengthen the patient-physician relationship essential to the continuity of a patient's care."

As is also stated in the Current Opinions of the Council on Ethical and Judicial Affairs of the American Medical Association: "9.12 *Physician-Patient Relationship: Respect for Law and Human Rights.* The creation of the physician-patient relationship is contractual in nature. Generally, both the physician and the patient are free to enter into or decline the relationship."

The majority quotes from the case of *Toth v Community Hosp. (supra,* at 265, n 3) in describing a situation where the private doctor's orders may clearly be "contraindicated". Discovery has been completed in this matter and there is no such indication which would lead the resident physician to overrule the private physician or interfere with the contractual relationship. The resident physician is not a roving angel of mercy, but rather a professional who does not substitute her judgment for that of a private attending physician unless the situation clearly mandates it.