■ MICHELLE GERNER, Appellant, v LONG ISLAND JEWISH HILLSIDE MEDICAL CENTER, Respondent, and MORTON J. GELLER, Appellant. [609 NYS2d 898] —Order, Supreme Court, Kings County (Vincent Pizzuto, J.), entered December 9, 1991, granting the defendant Medical Center's motion for summary judgment, unanimously reversed, on the law, and the complaint is reinstated against that defendant, without costs.

Plaintiff gave birth to her infant son at the defendant Medical Center on March 8, 1971. Defendant Geller, a private physician, entered the picture six hours later, as attending pediatrician with resident privileges. On March 11, Dr. Geller, having noted and confirmed a slightly jaundiced condition, ordered phototherapy. After three days of such treatment and monitoring, the child's bilirubin count fell to a normal level, and Dr. Geller ordered the patient discharged.

Dr. Geller continued to treat the child for hyperbilirubinemia and kernicterus over the next four years. The child today is brain damaged, with permanent neurological dysfunction.

Plaintiff alleged medical malpractice on the part of both the Medical Center and the private attending physician for failing to diagnose and treat the jaundice in a timely fashion. Follow-

ing examinations before trial, the IAS Court granted the Medical Center's motion for summary judgment, without opinion. Plaintiff and defendant Geller appeal.

Two factual issues were left unresolved after EBT. The first is whether there were indications, in the first six hours after birth, which should have alerted the Medical Center delivery and nursery staff of possible hyperbilirubinemia. According to the Medical Center's expert, one such indicator overlooked was a blood incompatibility between mother and child. Since the Medical Center acted alone as plaintiff's medical practitioner over those first six hours, it would have to bear sole responsibility for any malpractice committed during that period.

The second issue is whether the Medical Center should be exempt from sharing any responsibility for malpractice over the course of the next six days (until the infant's discharge) by reason of the fact that for the balance of that period the infant was technically under the care of a private attending physician *(see, e.g., Clott v Kings Highway Community Hosp.,* 120 AD2d 634). A number of allegations are raised as to negligence attributed solely to Medical Center staff during that period. For example, notes of attending nurses at the nursery failed to record any jaundiced condition, or indeed any reference to color, until the third day after birth, despite the parents' complaints to hospital personnel about the baby's yellowish complexion practically since birth. The child's true condition during those first three days is thus at issue *(Mango v Long Is. Jewish-Hillside Med. Ctr.,* 123 AD2d 843, 844). Furthermore, Dr. Geller ordered a complete blood count and bilirubin test as soon as he learned of the first recorded observation by a nurse of a jaundiced appearance, on the morning of March 11. Test results, which showed a moderately elevated bilirubin count, were not reported by the laboratory until ten hours after the blood sample was drawn, and it took another three hours before Dr. Geller's order for phototherapy was carried out. An issue is thus raised as to whether the thirteen-hour delay in commencement of the treatment had any permanent effect.

Normally, a hospital is shielded from liability for the negligence of a private attending physician practicing at its facility *(Fiorentino v Wenger,* 19 NY2d 407; *Brusco v St. Clare's Hosp. & Health Ctr.,* 128 AD2d 390, *appeal dismissed* 70 NY2d 692, *lv denied* 70 NY2d 606). However, a myriad of cases hold that a hospital may yet be held concurrently liable with a private practitioner for the independent negligence of the former's

medical staff *(Laub v Montefiore Hosp. & Med. Ctr.,* 115 AD2d 430; *Currier v St. Peter's Hosp.,* 89 AD2d 693; *Horton v Niagara Falls Mem. Med. Ctr.,* 51 AD2d 152; *Matlick v Long Is. Jewish Hosp.,* 25 AD2d 538, 539). During pre-trial discovery, the Medical Center failed to dispel allegations of its own negligence concurrent with Dr. Geller's attendance to this patient *(see, Christopher v St. Vincent's Hosp. & Med. Ctr.,* 121 AD2d 303, 305). Since the court's function on a motion for summary judgment is to identify just such triable issues of fact, the Medical Center's motion should have been denied *(Critelli v Long Is. Jewish-Hillside Med. Ctr.,* 115 AD2d 632). Concur—Carro, J. P., Ellerin, Wallach, Kupferman and Nardelli, JJ.