DeSena v New York Univ. Med. Ctr. (2003 NY Slip Op 23920)

DeSena v New York Univ. Med. Ctr.

2003 NY Slip Op 23920 [2 Misc 3d 656]

December 17, 2003

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 14, 2004

[*1]
Phillip DeSena, an Infant, by His Mother and Natural Guardian, Patricia DeSena, et al., Plaintiffs,
v
New York University Medical Center et al., Defendants.
Supreme Court, New York County, December 17, 2003

APPEARANCES OF COUNSEL

Bower, Sanger & Lawrence, P.C., New York City (Stacy Niditch of counsel), for New York University Medical Center and another, defendants. Maloney & Letowsky, New York City (David Pollack of counsel), for plaintiffs.
{**2 Misc 3d at 657} OPINION OF THE COURT

Joan B. Carey, J.

Introduction

Motion by defendants New York University Medical Center and Peter Zakow, M.D., for summary judgment dismissing the complaint insofar as asserted against them.

Facts and Procedural Posture

The injured plaintiff Phillip DeSena, an infant born with a severe congenital heart defect, was referred by a pediatric cardiologist to defendant Stephen Colvin, M.D., for surgery on the infant's heart (defendants' motion papers, exhibit F, at 12, 33-36, 51). In February 1999, Dr. Colvin performed, without complication, emergency systemic-to-pulmonary arterial shunt surgery on the infant (id. at 30, 35-37). 
Subsequently, on October 7th of the same year, Dr. Colvin executed a bilateral, bidirectional Glenn procedure on the infant (id. at 12, 30, 34, 53-54, 62, 82-83). The procedure entails, among other things, the anastomosis (i.e., attachment) of one end of the superior vena cava to the pulmonary artery (id. at 83, 117, 122-123; plaintiffs' opposition, exhibit A, at 2-3). The procedure was conducted in an operating room owned and operated by defendant New York University Medical Center (hereinafter NYU) (defendants' motion papers, exhibit A, at 2; exhibit C, at 1). 
Defendant Peter Zakow, M.D., a cardiothoracic resident at NYU at the time, assisted Dr. Colvin during the procedure (id., exhibit F, at 102; id., exhibit G, at 55-56, 171). During his examination before trial (EBT), Dr. Zakow recalled scrubbing in for the procedure, but could not recall specific details thereof (id. at 89, 118). However, according to the testimony adduced during the EBT of Dr. Colvin, Dr. Zakow's assistance in the procedure was limited to "[h]elping. Sucking. Holding thread. Sutures. Forceps" (id., exhibit F, at 172). Dr. Colvin also stated during his EBT, in response to a [*2]question regarding the identity of the author of the operative note prepared following the procedure, that "It's my operation. I operated on [the infant]. Nobody else. Nobody else would write anything . . . Not Dr. Zakow. Nobody else d[id] the surgery but me." (Id. at 62.)
After Dr. Colvin anastomosed the superior vena cava to the pulmonary artery he detected the presence of an obstruction at the {**2 Misc 3d at 658}anastomotic site (id. at 116-123, 131-132). Dr. Colvin released the anastomosis and discovered that a clot (i.e., thrombus) had formed at the anastomotic site, which he immediately removed (id. at 119-124, 143). Approximately 15 to 20 minutes after Dr. Colvin reanastomosed the superior vena cava to the pulmonary artery he detected another obstruction at the anastomotic site (id. at 128-129, 131, 133-135). Dr. Colvin again released the anastomosis and found a second clot therein (id. at 170-171). After clearing the second clot, Dr. Colvin placed the infant on bypass (i.e., heart-lung machine), and reanastomosed the superior vena cava to the pulmonary artery unitizing a pericardial patch (id. at 172-176, 179).
As a result of the procedure, the infant experienced bradycardia (i.e., slowing of heart beat) and hypoxia (i.e., deficiency in flow of oxygen), and ultimately sustained a neuroglial injury (id. at 152-155).
The infant's mother, Patricia DeSena, as natural guardian of the infant and individually, commenced this action to recover damages for medical malpractice and lack of informed consent (id. exhibit A). The complaint, as amplified by the bills of particulars, alleges that the defendants were negligent, among other things, for failing to utilize cardiopulmonary bypass throughout the entire procedure (id. at 2).
Defendants NYU and Dr. Zakow have made the instant motion seeking summary judgment dismissing the complaint insofar as asserted against them. They maintain that summary judgment in their favor on the plaintiffs' cause of action sounding in medical malpractice is appropriate given the absence of evidence that Dr. Zakow departed from good and accepted medical practice. The moving defendants also maintain that they are not liable for damages emanating from Dr. Colvin's decision not to utilize cardiopulmonary bypass throughout the entire procedure because that decision rested upon his professional judgment and did not so greatly depart from normal medical practice so as to give rise to liability based upon their failure to intervene. With respect to the plaintiffs' cause of action for lack of informed consent, NYU and Dr. Zakow contend that they did not order the procedure, and that any lack of informed consent was not a proximate cause of the infant's injuries.
In opposition to the motion, the plaintiffs maintain that NYU and Dr. Zakow may be held liable for carrying out the orders of Dr. Colvin since they knew or should have known that the failure to utilize cardiopulmonary bypass throughout the entire procedure was clearly contraindicated by normal practice.{**2 Misc 3d at 659} 
In support of this argument the plaintiffs have submitted the affidavit of a pediatric heart surgeon (hereinafter the expert) who averred that the defendants deviated from accepted medical standards by failing to utilize cardiopulmonary bypass throughout the entire procedure, a shunting procedure and/or hypothermia (plaintiffs' opposition, exhibit A, at 2-3). The expert also averred that this error led to the formation of the clots, which significantly decreased the flow of blood to the infant's brain, and, concomitantly, caused the infant's brain injury (id. at 3-4).

Analysis

As a general rule, a hospital is sheltered from liability where its employees follow the directions of a private attending physician (see e.g. Cook v Reisner, 295 AD2d 466 [2d Dept 2002]; Filippone v St. Vincent's Hosp. & Med. Ctr. of N.Y., 253 AD2d 616 [1st Dept 1998]). However, where the hospital's staff knew or should have known that the attending physician's orders were "so clearly contraindicated by normal practice that ordinary prudence require[d] inquiry into the correctness of the orders," liability may be imposed on the hospital (Toth v Community Hosp. at Glen Cove, 22 NY2d 255, 265 [1968]; Filippone v St. Vincent's Hosp. & Med. Ctr. of N.Y., supra at 618; Somoza v St. Vincent's Hosp. & Med. Ctr. of N.Y., 192 AD2d 429, 431 [1st Dept 1993]; Pollicina v Misericordia Hosp. & Med. Ctr., 158 AD2d 194, 199 [1st Dept 1990]; Christopher v St. Vincent's Hosp. & Med. Ctr., 121 AD2d 303 [1st Dept 1986]; see e.g. Dixon v Freuman, 175 AD2d 910 [2d Dept 1991]).
In the case at bar, the moving defendants demonstrated, through the EBT testimony of Dr. Colvin and Dr. Zakow, that Dr. Colvin planned, directed, and performed the procedure. These defendants also demonstrated that Dr. Zakow's involvement with the procedure was limited to performing routine tasks (e.g., providing suction in the operating field, holding thread, sutures and forceps) while under the direction and supervision of Dr. Colvin. Thus, the moving defendants made a prima facie showing of entitlement to dismissal of the plaintiffs' cause of action sounding in medical malpractice insofar as asserted against NYU (see Cook v Reisner, supra; Walter v Betancourt, 283 AD2d 223 [1st Dept 2001]; Filippone v St. Vincent's Hosp. & Med. Ctr. of N.Y., supra; Argenziano v Romita, 250 AD2d 384 [1st Dept 1998]; Nagengast v Samaritan Hosp., 211 AD2d 878 [3d Dept 1995]).{**2 Misc 3d at 660}
In opposition to the moving defendants' prima facie showing of entitlement to summary judgment dismissing their cause of action sounding in medical malpractice insofar as asserted against NYU, the plaintiffs failed to raise a triable issue of fact. Specifically, the affidavit of the expert failed to raise a triable issue of fact with regard to whether Dr. Colvin's decision not to utilize cardiopulmonary bypass throughout the entire procedure and/or other particular measures (i.e., shunting procedure, hypothermia) was clearly contraindicated by normal practice (see Ventura v Beth Israel Med. Ctr., 297 AD2d 801 [2d Dept 2002]; Cook v Reisner, supra; Eisen v Mather Mem. Hosp., 278 AD2d 272 [2d Dept 2000]; Argenziano v Romita, supra; Nagengast v Samaritan Hosp., supra; cf. Somoza v St. Vincent's Hosp. & Med. Ctr. of N.Y., supra [1st Dept 1993] [affidavit of plaintiffs' expert sufficient to raise triable issue of fact; resident physician aware of injured plaintiff's abnormal sonogram results, actively participated in care of injured plaintiff throughout her hospital stay]). 
The expert merely averred that the defendants deviated from accepted standards of care by failing to utilize cardiopulmonary bypass throughout the entire procedure, a shunting procedure and/or hypothermia. While the expert was not required to recite the term "clearly contraindicated" in the affidavit to characterize the impropriety of the procedure (see Somoza v St. Vincent's Hosp. & Med. Ctr. of N.Y., supra; Christopher v St. Vincent's Hosp. & Med. Ctr., supra), the import of the opinion, in order to raise a triable issue of fact, should have been that the impropriety of Dr. Colvin's decision not to utilize cardiopulmonary bypass throughout the entire procedure and/or other particular measures was patent or conspicuous (see Moore and Gaier, The "Clearly Contraindicated" Exception, NYLJ, Nov. 4, 1997, at 3, col 1; see also [*3]Filippone v St. Vincent's Hosp. & Med. Ctr. of N.Y., supra; Cook v Reisner, supra [great departure from normal medical practice]; Nagengast v Samaritan Hosp., supra [clear evidence of malpractice]). Given the absence of such a conclusion in the expert's affidavit, no triable issue of fact exists regarding NYU's liability.
Similarly, dismissal of the plaintiffs' cause of action sounding in medical malpractice insofar as asserted against Dr. Zakow is warranted. In opposition to the moving defendants' prima facie showing that Dr. Zakow did not depart from accepted standards of medical care, and, concomitantly, that Dr. Zakow did not commit an independent act of negligence, the plaintiffs failed to raise {**2 Misc 3d at 661}a triable issue of fact (see Eisen v Mather Mem. Hosp., supra; Filippone v St. Vincent's Hosp. & Med. Ctr., supra; see also Walter v Betancourt, supra).
Finally, the moving defendants are entitled to dismissal of the plaintiffs' cause of action for lack of informed consent as they neither ordered nor performed the procedure (see Domaradzki v Glen Cove Ob/Gyn Assoc., 242 AD2d 282 [2d Dept 1997]; Spinosa v Weinstein, 168 AD2d 32 [2d Dept 1991]).

Conclusion

Based upon the foregoing, it is hereby ordered that the motion of defendants New York University Medical Center and Peter Zakow, M.D., is granted, the complaint insofar as asserted against these defendants is dismissed, and the action against the remaining defendant, Stephen B. Colvin, M.D., is severed; and it is further ordered that the clerk of the court is directed to enter judgment for defendants New York University Medical Center and Peter Zakow, M.D., dismissing the complaint insofar as asserted against them.