OPINION OF THE COURT
Dianne T. Renwick, J.
This action stems from the alleged medical malpractice of Dr. Shishir Bhattacharya and St. John’s Riverside Hospital during the prenatal care of plaintiff mother and the delivery of plaintiff infant, who was pronounced dead shortly after delivery. Defendant doctor and defendant hospital now move for summary judgment dismissing the respective claims asserted against them. Plaintiff cross-moves for a court order, pursuant to CPLR 3212 (g), specifying certain facts to be deemed established for all purposes in the action. These motions raise an issue apparently left unresolved by the seminal cases of Broadnax and Sheppard-Mobley, as to whether a woman may recover for emotional distress where her baby is pronounced dead within minutes of delivery and it appears that the infant is neither viable nor evinces consciousness.
Factual and Procedural Background
Plaintiff Rosa Marie Mendez received prenatal care at the St. Joseph’s prenatal clinic under the care of Dr. Bhattacharya, an obstetrician. On October 24, 2002, plaintiff presented to St. John’s Riverside Hospital complaining of contractions and was admitted to the labor unit. Dr. Bhattacharya was the attending physician on call to cover St. Joseph’s labor patients. Dr. Bhattacharya delivered Mendez’s baby girl, Cayla Marie Walters, who was pronounced dead after 45 minutes of unsuccessful resuscitation.
On October 14, 2004, plaintiff Mendez commenced this medical malpractice action, individually, and on behalf of the estate of Cayla Marie Walters, deceased. In the complaint, plaintiff avers four causes of action: (1) pain and suffering as to the infant; (2) wrongful death; (3) physical injury as to the mother; and (4) emotional distress as to the mother. Subsequently, on July 29, 2005, plaintiff withdrew the first and second causes of action, explaining that the causes of action were now limited to plaintiff mother’s physical injuries and emotional distress.
Defendant St. John’s Riverside Hospital now moves for summary judgment dismissing all the claims asserted against it on the ground that the care and treatment provided by the hospital staff was appropriate and within accepted standards of medical *976 care. In addition, defendant St. John’s Riverside Hospital argues that it cannot be found vicariously liable for any alleged malpractice committed by the obstetrician, Dr. Bhattacharya, since the doctor performed the hospital delivery as an independent contractor. Dr. Bhattacharya cross-moves for summary judgment dismissing the claims asserted against him on the ground that the care and treatment rendered to plaintiff mother did not depart from accepted standards of medical practice. Alternatively, defendant Bhattacharya argues that plaintiff cannot maintain a cause of action for emotional distress for the infant’s death as the infant was not stillborn. Besides opposing defendant doctor’s motion for summary judgment, plaintiff cross-moves, for an order pursuant to CPLR 3212 (g), which permits a court, when a summary judgment motion is denied or granted in part, to ascertain what facts are not in dispute or are incontrovertible, and to make an order specifying the facts deemed established for all purposes in the action. Specifically, plaintiff requests that this court determine that plaintiff mother has a legally tenable cause of action for emotional distress under the undisputed facts of this case.
Discussion
A. Whether Dr. Bhattacharya Committed Medical Malpractice?
The court first examines that part of the cross motion by defendant Dr. Bhattacharya seeking summary judgment dismissing the claims asserted against him since the grant of such motion would effectively render the remaining motions moot. A proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. (Zuckerman v City of New York, 49 NY2d 557 [1980].) Once this showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action. (Romano v St. Vincent’s Med. Ctr. of Richmond, 178 AD2d 467 [2d Dept 1991].)
In a medical malpractice case, the essential elements that the plaintiff must prove are two: (1) that the defendant’s conduct constituted a deviation or departure from accepted standards of medical practice, and (2) that such departure was the proximate cause of the plaintiffs injuries. (Amsler v Verrilli, 119 AD2d 786 [2d Dept 1986].) In a medical malpractice case, a defendant can *977 establish a prima facie case that summary judgment is warranted through either expert medical opinions (Dodes v North Shore Univ. Hosp., 149 AD2d 455 [2d Dept 19893), or an attorney’s affirmation annexing deposition testimony of a defendant physician and other proof such as hospital records. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].)
Here, in support of his motion for summary judgment, defendant Dr. Bhattacharya relies, inter aha, upon his own affidavit, in which he indicates that he is a physician duly licensed to practice medicine in New York State in the fields of obstetrics and gynecology. Further, based upon his own recollection of his treatment of plaintiff mother and his review of the medical records from St. John’s Riverside Hospital, Dr. Bhattacharya opines that he rendered care and treatment to plaintiff mother in accordance with good and accepted standards of medical practice. Specifically, Dr. Bhattacharya opines that he “appropriately monitored, assessed and evaluated the plaintiff and her fetus [throughout] her period of labor at St John’s in accordance with good and accepted standards of medical practice.”
Dr. Bhattacharya explains that the delivery was proceeding normally until the mother reached the second stage of labor— when she was fully dilated, 100% effaced, the fetus was at zero station and the mother was having moderate to strong contractions. At this second stage of labor, plaintiff mother was prepared for a vaginal delivery and was instructed, at appropriate intervals, to push. However, plaintiff mother was not pushing effectively to deliver the baby. To aid in the delivery, fundal pressure was applied, and the doctor then performed a midline episiotomy and attempted a vacuum extraction. When none of these steps helped deliver the baby, Dr. Bhattacharya informed plaintiff mother that, without a cesarian section, the baby was in severe jeopardy and might die; the baby would not be delivered vaginally. Plaintiff mother, however, allegedly refused Dr. Bhattacharya’s repeated requests to consent to a cesarian section. Ultimately, as the last resort, Dr. Bhattacharya obtained plaintiff mother’s consent to a forceps delivery, after informing her of the risks involved in such a procedure. Dr. Bhattacharya applied the “force blades to the side of the fetal head” and the baby was delivered before the “blades were locked.”
The affidavit of Dr. Bhattacharya provides defendant doctor with a prima facie entitlement to summary judgment by establishing that he did not deviate from accepted standards of medical practice during the delivery of plaintiff infant. Instead, *978 Dr. Bhattacharya’s testimony establishes that the death of the infant plaintiff was due solely to plaintiff mother’s refusal to consent to a delivery of the baby via a cesarian section, which was required to secure the life of the baby. The burden then shifts to plaintiff to establish that her cause of action against Dr. Bhattacharya is real and can be maintained at trial.
In opposition to the motion, plaintiff Mendez proffers her own deposition testimony during which she testified that Dr. Bhattacharya never informed her that a cesarian section was required to save the life of the baby. In addition, plaintiff proffers an affidavit from a doctor, whose identity need not be disclosed to the adversary at this time. (Carrasquillo v Rosencrans, 208 AD2d 488 [2d Dept 1994]; McCarty v Community Hosp. of Glen Cove, 203 AD2d 432 [2d Dept 1994].)[1] Plaintiffs medical expert is a physician duly licensed to practice in New York State and is board certified in obstetrics and gynecology. Plaintiff’s medical expert reviewed the records of St. John’s Riverside Hospital for the mother and child, pertaining to the admission to the labor unit, and the delivery by Mendez of a baby girl on October 24, 2002. Plaintiff’s medical expert also reviewed the affirmation of Louis Roth, M.D., dated October 13, 2006 and Dr. Roth’s autopsy report of the baby girl performed on October 26, 2006. In addition, plaintiff’s medical expert reviewed the affidavit and deposition testimony of Dr. Bhattacharya, and the deposition testimony of a labor and delivery nurse named Hosein. Finally, plaintiffs medical expert reviewed the deposition testimony of responding emergency room doctor, Richard Marino, M.D., and that of plaintiff Rosa Marie Mendez.
Based upon the aforementioned review, plaintiff’s medical expert opines within a reasonable degree of medical certainty that defendant Dr. Bhattacharya departed from accepted standards of care “in failing to recognize signs of fetal distress which were apparent on the electronic fetal monitor strips and failing to timely call for and perform a caesarian section.” Plaintiffs medical expert explains that the fetal monitor strips revealed that by “2:00 p.m., the baby’s heart rate decelerated following contractions and this deceleration was progressive and persis *979 tent.” Further, by 2:30 p.m., the heart rate was below 60 beats. Because of such significant decelerations, a cesarian should have been called at 3:00 p.m. instead of 4:15 p.m., the time Dr. Bhattacharya claims he decided to do it. Such delay, plaintiffs medical expert explains, unnecessarily prolonged the severe distress that the fetus was experiencing and ultimately caused asphyxiation, i.e., failure to receive adequate fetus oxygenation through the umbilical cord.
Further, plaintiffs medical expert opines within a reasonable degree of medical certainty that defendant Dr. Bhattacharya departed from accepted standards of care by misusing forceps. As plaintiffs medical expert explains, Dr. Bhattacharya erred in placing the forceps on the front and back of the baby’s head, instead of the sides. Specifically, it appears that Dr. Bhattacharya misjudged the position of the fetus within the pelvis. As a result of the misuse of the forceps, the baby suffered a fetal skull fracture during delivery.
These conflicting medical expert opinions demonstrate that there are material issues of fact that can only be resolved at trial. First, there is an issue of fact as to whether Dr. Bhattacharya ever informed plaintiff mother that a cesarian section was required to save the fetus’ life. Second, even if the doctor informed plaintiff mother that a cesarian section was required to save the fetus’ life, there is an issue of fact as to whether the request was timely made. Third, there is an issue of fact as to whether Dr. Bhattacharya misused forceps during the last stage of delivery. Finally, there is an issue of fact as to whether the alleged acts of medical malpractice contributed to the fetus’ demise.
B. Whether Plaintiff Mother May Assert a Claim for Emotional Distress?
Alternatively, defendant Dr. Bhattacharya argues that he is entitled to partial summary judgment dismissing plaintiff mother’s claim for emotional distress. A dismissal of such a claim would be tantamount to a dismissal of the whole action since plaintiff mother now concedes that she has no independent claim for personal injuries unrelated to the birth. Defendant doctor argues that plaintiff mother may not be able to recover for emotional injuries sustained as a result of the live birth of a child, even though the child died shortly after the birth, since plaintiff mother no longer alleges physical injury to herself beyond those naturally attendant to child birth.
With regard to prenatal medical treatment, medical professionals owe a separate duty of care to the mother and the *980 developing fetus. (Woods v Lancet, 303 NY 349, 357 [1951].) Thus, when a doctor negligently causes a fetus to suffer permanent injuries, the infant, if later born alive, has a cause of action against the doctor. (Id.) Likewise, if a doctor commits medical malpractice against the mother’s person that causes her physical injury, she has a separate cause of action against the doctor. (Endresz v Friedberg, 24 NY2d 478, 484 [1969].)
Until 2004, however, neither a mother nor a fetus had a cause of action if a doctor negligently caused a miscarriage or stillbirth unless the mother sustained actual physical injury. (Tebbutt v Virostek, 65 NY2d 931 [1985].) The Court of Appeals ended this anomaly by abrogating the rule of law set forth in Tebbutt v Virostek (supra). The Court held in Broadnax v Gonzalez (2 NY3d 148 [2004]), that the medical malpractice resulting in a miscarriage or stillbirth of a fetus is violative of the duty of care owed to an expectant mother even in the absence of an independent physical injury to the mother. The Court reasoned, quoting Judge Kaye’s dissent in Tebbutt v Virostek (supra, 65 NY2d at 940), that if “the fetus cannot bring suit, ‘it must follow in the eyes of the law that any injury here was done to the mother’ ” (Broadnax at 154).
As the Court explained in Broadnax (supra), in New York the law generally requires that a plaintiff sustain physical or economic injury to recover emotional distress damages. (Id. at 153.) Consistent with this general principle, the Court had held in Tebbutt v Virostek, decided prior to Broadnax, that a mother had to establish that she had an independent physical injury distinct from that suffered by the fetus (and distinct from the normal birth process) to recover for emotional distress when medical malpractice caused a stillbirth or miscarriage. (65 NY2d 931 [1985].) In Broadnax, the Court noted that the rule in Tebbutt created a “peculiar result” — medical caregivers could be liable for a parent’s emotional distress damages stemming from malpractice if the fetus survived, but were protected from liability for those damages in cases of miscarriage or stillbirth. (2 NY3d at 154.) Acting to correct this anomaly, the Court in Broadnax held that “medical malpractice resulting in miscarriage or stillbirth should be construed as a violation of a duty of care to the expectant mother, entitling her to damages for emotional distress” (at 155).
In Sheppard-Mobley v King (4 NY3d 627 [2005]) the Court revisited and limited Broadnax. Sheppard-Mobley involved a pregnant woman who was advised to terminate her pregnancy, *981 underwent an unsuccessful chemical abortion using methotrexate, and gave birth to a child who suffered from the effects of fetal methotrexate syndrome. She filed suit on behalf of the infant and herself, alleging physical and emotional injuries. The trial court granted the defendants’ motion for summary judgment with regard to the mother’s claim for emotional distress. The Appellate Division reversed based on Broadnax, which was decided while plaintiffs’ appeal was pending.
The issue before the Court of Appeals in Sheppard-Mobley was whether to allow a mother’s claim for emotional distress when an infant is born alive, without a mother’s independent physical injury. The Court declined to extend Broadnax to allow for emotional distress damages in this circumstance, reasoning that Broadnax was intended to remedy the injustice created by the lack of a remedy when the fetus is not born alive. As the Court observed, its holding in Broadnax was “a narrow one, intended to permit a cause of action where otherwise none would be available to redress the wrongdoing that resulted in a miscarriage or stillbirth” (at 637).
The Court noted that it reached a different conclusion in Sheppard-Mobley, where malpractice results in the live birth of an injured infant because, in that circumstance, a remedy was available — i.e., a child born alive may bring a medical malpractice action for injuries caused by malpractice during pregnancy. Indeed, the Court held that the infant properly alleged a claim for this type of damage in Sheppard-Mobley. Sheppard-Mobley thus requires a mother who seeks emotional distress damages to show independent physical injury (as is normally required to recover damages for emotional distress claims) unless her pregnancy results in a stillbirth or miscarriage, in which case there would be no other remedy.
The factual scenario of this case raises an issue left unresolved by the seminal cases of Broadnax and Sheppard-Mobley, as to whether a woman may recover for emotional distress where the baby was pronounced dead within minutes of delivery and it appears that the baby was neither conscious nor viable. In this case, it is undisputed that upon delivery, the baby had a heartbeat but “appeared flaccid, without respiration and blue.” The baby was given an Apgar score of one based solely on the heartbeat of less than 100. A second Apgar score after five minutes was zero. Attempts to resuscitate the baby (mechanical ventilation and CPR) failed to revive the baby.
Defendant doctor argues that applying the dictates of Broadnax and its progeny Sheppard-Mobley to the factual scenario of *982 this case compels this court to hold as a matter of law that plaintiff mother has no cause of action for emotional distress. According to defendant doctor, the case falls under Broadnax and its progeny Sheppard-Mobley since the child was born alive, as demonstrated by the presence of a heartbeat, regardless of the short period of time it lasted. Plaintiffs expert, however, opines that, even if there was technical sign of life due to the lingering heartbeat, this does not mean that the child was capable of life. On the contrary, plaintiffs medical expert opines that, upon delivery, the child was not viable, since there was no other sign of life besides the heartbeat; nor was there any sign of consciousness of any kind. Defendant doctor makes no attempt to refute plaintiffs medical expert’s conclusion.
Unfortunately, neither Broadnax nor its progeny has confronted the peculiar factual scenario herein where the baby showed minimal signs of life (heartbeat) upon birth for a momentary period, but the baby was never viable nor showed any signs of consciousness. This case does not present a typical battle of experts, where it is for the jury to decide which expert’s opinion is more credible. (See Velez v Policastro, 1 AD3d 429 [2d Dept 2003]; Cavlin v New York Med. Group, 286 AD2d 469 [2d Dept 2001].)
Rather, the relevant facts are essentially established. CPLR 3212 (g) empowers this court to ascertain what facts are not in dispute or are incontrovertible, make an order specifying such facts and deem them established for all purposes in the action. (See e.g., E. B. Metal & Rubber Indus. v County of Washington, 102 AD2d 599 [3d Dept 1984]; Chicago Dressed Beef Co. v Gold Medal Packing Corp., 22 AD2d 1010 [4th Dept 1964].) In this case, as noted above, plaintiff has established, through the uncontroverted opinion of her medical expert, that, even if there was a technical sign of life due to the lingering heartbeat, the child was not viable, since there was no other sign of life besides the momentary heartbeat; nor was there any sign of consciousness of any kind. Thus, the question becomes one of law within the province of this court.
Is the peculiar factual scenario herein a logical application of Broadnax or are the facts undistinguishable from SheppardMobley? This court finds that the considerations in this case are identical to those in Broadnax and the outcome should be the same. In this case, as noted above, it is uncontroverted that the baby had no consciousness or awareness. As a result, the baby’s estate cannot claim damages, in which case there can be no *983 recovery, since there can be no recovery for conscious pain and suffering without some level of awareness. (See McDougald v Garber, 73 NY2d 246 [1989].) Such situation clearly comports with the rationale of Broadnax and Sheppard-Mobley that the plaintiff mother’s cause of action “fills the gap,” and permits a cause of action where otherwise none would be available, to redress wrongdoing resulting from physical injury inflicted in the womb at labor and delivery.
Accordingly, where, like here, an infant dies within minutes of birth as a result of malpractice prior to or during delivery, a plaintiff mother should be able to raise a cause of action for emotional distress where there is no indication that the estate of the baby possesses a cause of action for the infant’s pain and suffering. To hold otherwise would permit a defendant doctor to obtain a dismissal of the mother’s cause of action for emotional distress because the baby was born “alive,” based solely on a momentary heartbeat, and then also argue before a judge or jury that the baby has no cause of action either, because the baby had no consciousness. As a matter of public policy, the law should not countenance such a scenario. Indeed, as pointed out by a legal commentator, “Mothers of babies who died shortly after birth as a result of malpractice during pregnancy, labor or delivery are surely as ‘aggrieved’ as mothers whose babies are stillborn from the same malpractice.”[2] Under the circumstances, this court exercises its discretion, pursuant to CPLR 3212 (g), and declares that the infant had no consciousness, hence there is no cause of action for the baby, and ipso facto, by the application of Broadnax and Sheppard-Mobley, the mother has a viable cause of action for emotional distress.
C. Whether the Action against Defendant St. John’s Riverside Hospital Should Be Dismissed?
The court next examines the motion by defendant St. John’s Riverside Hospital for summary judgment dismissing the claims asserted against it. As a general rule, a hospital is sheltered from liability where its employees follow the directions of a private attending physician. (See e.g. Cook v Reisner, 295 AD2d 466 [2d Dept 2002]; Filippone v St. Vincent’s Hosp. & Med. Ctr. of N.Y., 253 AD2d 616 [1st Dept 1998].) However, where the hospital’s staff knew or should have known that the attending physician’s orders were “so clearly contraindicated by normal *984 practice that ordinary prudence require[d] inquiry into the correctness of the orders,” liability may be imposed on the hospital. (Toth v Community Hosp. at Glen Cove, 22 NY2d 255, 265 [1968]; Filippone v St. Vincent’s Hosp. & Med. Ctr. of N.Y., supra at 618; Somoza v St. Vincent’s Hosp. & Med. Ctr. of N.Y., 192 AD2d 429, 431 [1st Dept 1993]; Pollicina v Misericordia Hosp. Med. Ctr., 158 AD2d 194, 199 [1st Dept 1990].)
In the case at bar, the moving defendant St. John’s Riverside Hospital has demonstrated, through the examination before trial testimony of Dr. Bhattacharya, that Dr. Bhattacharya planned, directed, and performed the delivery of the infant. The same evidence also demonstrated that St. John’s Riverside Hospital’s nursing staffs involvement with the procedure was limited to performing routine tasks while under the direction and supervision of Dr. Bhattacharya. In addition, defendant St. John’s Riverside Hospital has demonstrated, through an affidavit of Dr. Payma Jaul Jarrahy, a board-certified obstetrician, that the Hospital’s nursing staff properly monitored the plaintiff mother during the labor, and communicated properly with the attending physician.
Based upon the foregoing proof, defendant St. John’s Riverside Hospital met its burden of proving that plaintiffs cause of action against it has “no merit,” sufficient to warrant the court as a matter of law to direct judgment in defendant’s favor. (See e.g. Toth v Community Hosp. at Glen Cove, 22 NY2d 255 [1968]; Filippone v St. Vincent’s Hosp. & Med. Ctr. of N.Y., supra at 618; Somoza v St. Vincent’s Hosp. & Med. Ctr. of N.Y., 192 AD2d 429, 431 [1st Dept 1993]; Pollicina v Misericordia Hosp. Med. Ctr., 158 AD2d 194, 199 [1st Dept 1990].) Thus, defendant St. John’s Riverside Hospital is entitled to judgment as a matter of law, unless plaintiff has demonstrated by admissible evidence the existence of a factual issue requiring a trial of the claims asserted against defendant St. John’s Riverside Hospital. Plaintiff clearly did not meet her burden of establishing the existence of material issues of fact here, inasmuch as she failed to oppose the motion with which she was properly served.
Conclusion
For the foregoing reasons, it is ordered that the motion by defendant St. John’s Riverside Hospital, for summary judgment, dismissing the claims asserted against it, is granted; it is further ordered that the clerk shall sever the claims asserted against defendant St. John’s Riverside Hospital, and shall enter *985 a judgment in favor of said defendant, dismissing such claims against defendant St. John’s Riverside Hospital forthwith; it is further ordered that the motion by defendant Dr. Bhattacharya, seeking summary judgment dismissing the claims asserted against him, is denied; and it is further ordered that plaintiffs cross motion-for a court order pursuant to CPLR 3212 (g), specifying certain facts to be deemed established is granted to the extent that this court declares that the infant had no consciousness or awareness at anytime, such that there is no cause of action for the deceased plaintiff infant and, thus, by the mandate of Broadnax, the mother has a viable cause of action for emotional distress.

. While the expert’s affirmation is unsigned and has a redacted name, plaintiff offers to provide a signed and unredacted expert affirmation for in camera review. Defendant, however, has failed to raise an issue as to the deficiency of plaintiff expert’s affirmation, thus waiving an in camera review. (Celentano v St. Luke’s Roosevelt Hosp. Med. Ctr., 170 AD2d 198 [1st Dept 1991].)

. Moore and Gaier, Medical Malpractice, If Error Occurs BeforelDuring Delivery, Baby Dies Shortly After, NYLJ, June 7, 2005, at 3, col 1.