(July 24, 2014)

■ SEDINA LEVIN, Appellant, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (HARLEM HOSPITAL CENTER), Respondent. [990 NYS2d 490]—

Order, Supreme Court, New York County (Douglas E. McKeon, J.), entered February 24, 2012, which, to the extent appealed from as limited by the briefs, granted defendant's motion to dismiss the complaint, unanimously affirmed, without costs. Order, same court and Justice, entered November 30, 2012, which, upon reargument, adhered to the original determination, unanimously affirmed, without costs.

On October 10, 2008, at 11:20 p.m., plaintiff, who was 19 weeks pregnant, presented at defendant hospital with complaints of lower abdominal pain, contractions and vaginal bleeding. A physical examination revealed cervical dilation at three centimeters, with bulging, but intact membranes. There was fetal movement and a fetal heart rate of 140 beats per minute. She was given a primary diagnosis of threatened abortion and was admitted to the Labor and Delivery department for expectant management and prevention of premature delivery.

Plaintiff requested immediate cerclage* or transfer to another facility where that procedure could be performed. Defendant's hospital records reflect that one physician determined that cerclage could not be offered; another physician noted that the procedure could possibly be performed the following morning. No cerclage was performed, nor was plaintiff transferred to another hospital.

On October 23, 2008, at 3:40 a.m., a nurse, while tending to plaintiff, noticed that "the fetus came out moving." Defendant's records documented that, at that time, a previable female was "born via premature vaginal delivery due to incompetent cervix." An independent medical record was created for the infant at the time of her birth. The newborn weighed 375 grams (13 ounces), and had a heart rate of 70 to 80 beats per minute and weak movement of the extremities. She was transferred to the neonatal intensive care unit (NICU) and placed in a radiant warmer. Her Apgar scores were 1 out of a possible 10 at one and five minutes. She had no respiratory effort, a limp muscle tone, no response to stimuli and a pale or blue color. While in NICU, no resuscitation was attempted and the infant was given comfort care. At 7:06 a.m., approximately 3½ hours after delivery, the infant died.

On or about December 29, 2008, plaintiff, individually and as

* Cerclage is the placement of stitches in the cervix to hold it closed, a procedure used to keep a weak (incompetent) cervix from opening early, which can cause preterm labor and delivery.

proposed administrator of the infant's estate, filed a notice of claim against defendant, alleging, inter alia, negligence and medical malpractice in the treatment and management of the labor and delivery, and in the neonatal and pediatric care provided by defendant. Among the injuries alleged were conscious pain and suffering to the infant, and mental anguish to plaintiff. On or about July 30, 2009, plaintiff, on her own behalf, brought an action against defendant, alleging malpractice and lack of informed consent. Plaintiff had not been appointed as administrator of the infant's estate and no complaint has been filed on the estate's behalf.

In her bill of particulars, plaintiff alleged that defendant was negligent, inter alia, in failing to properly monitor her pregnancy, and in failing to order and place cervical cerclage, which resulted in miscarriage/stillbirth, all causing her to suffer depression, insomnia, conscious pain and suffering, loss of society and support of her child, emotional distress and loss of enjoyment of life.

Defendant moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint, arguing that, since the infant was born alive, and plaintiff has alleged no independent injury to herself, she could not recover for emotional distress under the authority of *Broadnax v Gonzalez* (2 NY3d 148 [2004]) and *Sheppard-Mobley v King* (4 NY3d 627 [2005]). In opposition, plaintiff argued that this case was distinguishable from *Broadnax* in that defendant's records characterized decedent as a "pre-viable fetus" who was never conscious, as opposed to an "infant." In reply, defendant reiterated that the infant was born alive and lived for approximately $3\frac{1}{2}$ hours, as evidenced by her separate medical records, and her birth and death certificates, as well as plaintiff's deposition testimony, thus bringing this action squarely within the ambit of the *Broadnax* and *Sheppard-Mobley* decisions.

The court granted defendant's motion, finding that the infant was indeed born alive and that plaintiff suffered no independent injury. Her claim was therefore precluded under the rationale of *Broadnax*.

Plaintiff moved to renew and reargue, contending that the court misapprehended the rationale in *Broadnax*, in that, although not stillborn, the infant here was never viable, never conscious and died shortly after birth. Plaintiff argued that the facts of this case were similar to those in *Mendez v Bhattacharya* (15 Misc 3d 974 [Sup Ct, Bronx County 2007]), where the court held that where "an infant dies within minutes of birth as a result of malpractice prior to or during delivery, a plaintiff

mother should be able to [bring] a cause of action for emotional distress where there is no indication that the estate of the baby possesses a cause of action for the infant's pain and suffering" (*id.* at 983).

In support of her motion to renew, plaintiff submitted, for the first time, the expert affirmation of Chone Ken Chen, M.D., who opined that even if the baby was born alive, there was no breathing or respiratory effort. As a result, she was never conscious. Moreover, even if there were moments of consciousness, the baby was completely without oxygenation from the time of birth and would have sustained a total loss of consciousness by 10 minutes after birth. Dr. Chen concluded that the baby was not a viable infant, was not capable of surviving outside the womb for any length of time, and was brain dead within 15 minutes after birth. Plaintiff also submitted her own affidavit and that of the baby's father, both of whom stated that the baby did show slight signs of movement after birth and that both individuals requested hospital personnel to make attempts to resuscitate the baby.

The court granted reargument and adhered to its original decision. We now affirm.

Defendant showed that plaintiff has no cause of action because the infant was born alive and plaintiff alleged no injury independent of the infant (*see Sheppard-Mobley*, 4 NY3d at 637-638). The hospital records demonstrated that the infant was born, had a heartbeat, and remained alive without life support for several hours. Further, the death certificate provided prima facie evidence of the infant's birth and death (Public Health Law § 4103 [3]; CPLR 4520; *Fiorentino v TEC Holdings, LLC*, 78 AD3d 766, 767 [2d Dept 2010]).

In opposition to defendant's motion to dismiss, plaintiff mother failed to show that she had a cause of action (*cf. Sheppard*, 4 NY3d at 637-638). Further, the evidence plaintiff submitted in support of her motion to renew did not state new facts that would change the court's original determination (CPLR 2221 [e] [2]). Indeed, Dr. Chen noted the infant's Apgar scores were low, indicating a heart rate of between 70 to 80 beats per minute. Although he opined that because she was not breathing she was not conscious, he also opined that "even if there were some moments of consciousness," there would have been a loss of consciousness after 10 minutes. Despite his conclusory opinion that the infant would have been "brain dead" within 15 minutes after birth, he presented no evidence to contradict defendant's showing that the infant was born alive and remained so for some 3½ hours. Additionally, as noted, both plaintiff and

the infant's father stated that the infant demonstrated some spontaneous movement and both requested hospital personnel to attempt to resuscitate her.

*Amin v Soliman* (67 AD3d 835 [2d Dept 2009]), a case where plaintiff successfully raised an issue of fact as to whether the deceased infant had been born alive, is instructive. In *Amin*, defendants claimed there had been a live birth. However, there was no respiratory response, the Apgar score was zero at one, five and ten minutes after birth and the infant died within ten minutes after being removed from a ventilator upon which she had been placed (67 AD3d at 836). Here, the infant had a heartbeat and lived on her own without any means of life support for approximately 3½ hours. This is a sufficient period to support a claim for wrongful death (*see Ramos v La Montana Moving & Stor.*, 247 AD2d 333 [1st Dept 1998]).

Plaintiff argues that the rationale of *Mendez v Bhattacharya* (15 Misc 3d 974 [2007]) should be applied to this case. In *Mendez*, the infant had an Apgar score of one at one minute and zero at five minutes (15 Misc 3d at 981). It was uncontroverted that "even if there was a technical sign of life due to the lingering heartbeat, the child was not viable, since there was no other sign of life besides the momentary heartbeat" (*id.* at 982). The infant had no respiration and efforts to resuscitate by mechanical ventilation and CPR were unsuccessful (*id.* at 981). The court found that under those facts, the presence of a "momentary heartbeat" did not rise to the level of a live birth within the purview of the *Broadnax* and *Sheppard-Mobley* decisions, and therefore the plaintiff mother had a viable cause of action for emotional distress (*id.* at 983).

That is clearly not the situation before us. To accept plaintiff's contention that, where there is a live birth but the infant never attains consciousness, a mother should be permitted to maintain a cause of action for emotional distress would impermissibly expand the narrow holdings in *Broadnax* and *Sheppard-Mobley*. Plaintiff was entitled to bring a wrongful death action on behalf of the estate of the person who was injured, i.e., the infant who survived, albeit briefly (*cf. Mendez*, 15 Misc 3d at 983). Plaintiff tacitly acknowledged this by serving a notice of claim as the proposed administrator on behalf of the infant's estate.

Accordingly, since the infant was born alive and plaintiff did not sustain any independent injury, she may not maintain a cause of action to recover damages for emotional harm. Concur—Gonzalez, P.J., Sweeny, Moskowitz, Freedman and Kapnick, JJ.