(May 8, 2003)

■ FELIPE NIEVES, Respondent, v MONTEFIORE MEDICAL CENTER et al., Appellants, et al., Defendants. [760 NYS2d 419] —Order, Supreme Court, Bronx County (Michael DeMarco, J.), entered August 27, 2001, which denied defendants' motion for partial summary judgment dismissing the infant plaintiff's claims against them, unanimously affirmed, without costs.

Plaintiff's decedent, Elizabeth Veros Nieves, was infertile due to a congenital chromosomal disorder known as Turner's Syndrome, a condition in which a woman lacks one "X" chromosome. When Ms. Nieves sought to become pregnant, she was referred by her gynecologist, defendant Dr. Amid Moota-

bar, to defendant The Fertility and Hormone Center of Montefiore Medical Center (the Center). She was first seen by defendant Dr. Hussein Amin at the Center on July 17, 1992, when she was 29 years old; at this examination, Dr. Amin noted that Ms. Nieves' "chief complaint" was Turner's Syndrome. Although plaintiff asserts that it is extremely rare for a woman with Turner's Syndrome to undergo such treatment, on November 17, 1993, the Center accepted Ms. Nieves as a candidate for embryo implantation following in vitro fertilization of donor eggs. Ultimately, on November 30, 1995, at the Center, defendant Dr. Hussein Amin successfully transferred embryos into Ms. Nieves' uterus. The Center subsequently administered a pregnancy test, monitored her hormone levels for the next several weeks, and performed two follow-up ultrasound tests. The Center asserts that after the second ultrasound on January 5, 1996, it had no further participation in Ms. Nieves' prenatal care, which was monitored by Dr. Mootabar.

On June 12, 1996, Ms. Nieves suffered an aortic dissection, which necessitated an immediate, premature delivery of the infant plaintiff, Christina Nieves. Ms. Nieves died as a result of this incident on July 31, 1996. It is alleged that as a result of her premature delivery, Christina sustained severe and serious brain damage and accompanying neurological injuries.*

This action contains claims of malpractice by both the estate of Elizabeth Veros Nieves and by Christina Nieves, as well as derivative claims by Elizabeth's husband, Felipe Nieves. It is based upon the assertion that coarctation (constriction) of the aorta is common in a woman with Turner's Syndrome, and that as a consequence, Ms. Nieves was at heightened risk for aortic dissection if placed under stress, such as that which the body experiences in pregnancy. The complaint asserts that defendants failed to inform Ms. Nieves of this danger, failed to advise her against attempting pregnancy and in favor of terminating the pregnancy once it was achieved, and also failed to properly monitor her cardiac condition during her pregnancy in view of this extraordinary risk.

The motion at issue seeks partial summary judgment dismissing the fourth and fifth causes of action, asserted by Christina Nieves as against the Center, Montefiore and Dr. Amin, along with Mr. Nieves' derivative claims in the sixth

---

* Since this is a summary judgment motion in which issues of fact are not resolved, defendant's contrary assertion that Christina's injuries resulted from her contracting meningitis subsequent to her release from the hospital is, aside from being unsupported in the record, pointless.

and eighth causes of action. The moving defendants argue that Christina has no legally cognizable claim against them, contending that her claims actually seek damages for wrongful life, and that they provided no care to Christina and had no responsibility to her. No challenge is brought in this motion regarding the claims against Dr. Mootabar and the other defendants, or the claims made by the estate of Elizabeth Nieves.

The moving defendants correctly point out that the law does not permit Christina to base a cause of action upon the claim that it was contraindicated for her to have been conceived or born, or for her mother to have been impregnated. A child is not entitled to damages based upon a claim that had defendants properly carried out their duty, the child would not have been brought into existence (*Becker v Schwartz,* 46 NY2d 401, 411-412 [1978]).

However, defendants' characterization ignores the full scope of plaintiff's allegations. Plaintiff's claims include allegations that defendants failed to recommend and advise Ms. Nieves against attempting pregnancy and failed to recommend and advise that she terminate her pregnancy, in view of the risks associated with Turner's Syndrome. However, while these allegations do not support a claim of malpractice on behalf of Christina, they are properly included as they support the causes of action for malpractice brought by the estate of Ms. Nieves; indeed, defendants do not argue to the contrary.

There are other allegations of breach of duty in the complaint and bill of particulars which support a cognizable malpractice claim on behalf of Christina against the moving defendants. These include the failure to advise Ms. Nieves of the heightened risk of aortic dissection when a woman with Turner's Syndrome becomes pregnant, and to advise that she arrange for the special monitoring of her cardiac condition during her pregnancy, in order to watch for and prevent just such an occurrence. Christina alleges that the moving defendants improperly failed to inform Ms. Nieves both of the heightened risk caused by her particular condition, and of the need for special monitoring, and that because Ms. Nieves, lacking such knowledge, proceeded with her pregnancy without the necessary cardiac monitoring, she suffered an aortic dissection and a premature delivery as a result, with the ensuing injury to Christina.

The point is made by defendants that Christina's damages could not have been proximately caused by the moving defendants because there was no relationship between their

care of Ms. Nieves and the injuries Christina sustained. However, we reject defendants' suggestion that only the mother may assert negligence in her prenatal care, even where the infant alleges that she was herself harmed as a result. A claim may properly be made on behalf of an infant for injuries allegedly sustained in utero or due to premature birth attributed to defendants' malpractice in their prenatal care of the infant plaintiff's mother (*see e.g. Woods v Lancet,* 303 NY 349 [1951]; *Royal v Booth Mem. Med. Ctr.,* 270 AD2d 243 [2000]; *Telsey v County of Nassau,* 237 AD2d 428 [1997]).

Although the complaint and bill of particulars may have been somewhat inartfully drawn so as to merge the allegations in support of the plaintiff's distinct causes of action, dismissal of Christina's causes of action is not warranted.

Furthermore, the moving defendants also emphasize that Ms. Nieves was "medically cleared" for pregnancy by her own retained obstetrician, Dr. Mootabar, and that her pregnancy was monitored solely by him. With this remark, they seem to imply that although *Dr. Mootabar* may have breached his duty to warn Ms. Nieves of the risks, *their* sole obligation to her was limited to performance of the in vitro fertilization and embryo implantation.

Initially, the assertion that her referral involved some sort of medical clearance is, on the record before this Court, merely an unsupported assertion, rather than an established fact.

Moreover, the movants offer no citations in support of the proposition that a physician performing a procedure upon a referred patient has no duty to inform that patient of its inherent risks to her, or that the specialist performing a procedure may rely upon the patient's treating physician who made the referral to provide the necessary warnings. In fact, the controlling statute does not support that proposition: Public Health Law § 2805-d (1) imposes the duty of obtaining informed consent on the "person *providing* the professional treatment" (emphasis added). Indeed, the Second Department, in discussing a malpractice claim against a podiatrist who referred a patient for a surgical procedure, explained that where a treating physician and a surgeon recommended a particular procedure, *both* were obligated to obtain the patient's informed consent to the procedure (*see Spinosa v Weinstein,* 168 AD2d 32, 38 [1991], citing *Prooth v Wallsh,* 105 Misc 2d 603, 606 [1980]).

A fertility specialist approached by an infertile individual seeking to achieve pregnancy has the obligation to ensure that the patient is fully informed of the risks attendant to such

pregnancy, in view of her individual health and circumstances, before attempting it. This obligation cannot be avoided by the existence of a treating physician who has the same, or even a broader, obligation.

Defendants having failed to demonstrate entitlement to judgment as a matter of law, the motion for partial summary judgment was properly denied. Concur—Buckley, P.J., Saxe, Rosenberger, Lerner and Gonzalez, JJ.