OPINION OF THE COURT
Rosenblatt, J.
These two cases call upon us to revisit a question we last addressed in Tebbutt v Virostek (65 NY2d 931 [1985]): whether, absent a showing of independent physical injury to her, a mother may recover damages for emotional harm when medical malpractice causes a miscarriage or stillbirth.
L
A. Broadnax
While pregnant, plaintiff Karen Broadnax was under the care of defendants Frederick Gonzalez, an obstetrician, and Georgia Rose, a certified nurse-midwife. On September 25, 1994, at 1:45 a.m., plaintiff telephoned Rose to say that her water had broken *152 and that she had expelled a large amount of blood. Rose advised plaintiff and her husband, Jeffrey, to meet her at defendant Westchester Birth Center. When she arrived there, at approximately 3:00 a.m., plaintiff again experienced vaginal bleeding. She and her husband asked Rose whether they should go across the street to St. John’s Riverside Hospital for immediate treatment. Rose telephoned Dr. Gonzalez, who directed that plaintiff be transported to the Columbia Presbyterian Allen Pavilion in Manhattan.
Accompanied by Rose, the Broadnaxes reached the Allen Pavilion at about 3:45 a.m. Dr. Gonzalez had not yet arrived. In his absence, however, Rose did not contact the on-call doctor. About 45 minutes later—almost two hours after plaintiff arrived at the Westchester Birth Center—Dr. Gonzalez examined plaintiff and detected fetal heart rate decelerations. Rather than performing an emergency cesarean section, Dr. Gonzalez conducted a vaginal and pelvic examination. He then performed a sonogram, but could no longer detect a fetal heartbeat. Approximately half an hour later, around 5:15 a.m., Dr. Gonzalez undertook a cesarean section, delivering a full-term stillborn girl. Autopsy reports indicated that a placental abruption caused the fetus to die before delivery.
The Broadnaxes sued defendants, alleging that their failure to recognize and properly treat plaintiffs placental abruption supported a cause of action for medical malpractice and related claims. At the close of plaintiffs’ case, Supreme Court granted defendants’ motion pursuant to CPLR 4401 for judgment as a matter of law. The Appellate Division affirmed, holding that Tebbutt v Virostek barred plaintiff from recovering damages for emotional or psychological harm stemming from the stillbirth because she adduced no evidence of having suffered a legally cognizable physical injury distinct from the fetus’s.
B. Fahey
Plaintiff Debra Ann Fahey became an obstetrical patient of Dr. Anthony C. Canino, of defendant OBGYN Health Care Associates, EC. (OBGYN). In August 1999, Dr. Canino informed her that she was carrying twins. On October 28, 1999, on a follow-up visit with Dr. Canino’s partner, defendant Dr. Patrick F. Ruggiero, plaintiff complained of lower abdominal pains and cramping. Based on an ultrasound, Dr. Ruggiero concluded that one of the twins was pressing against plaintiffs sciatic nerve. Two days later, during the eighteenth week of pregnancy, *153 plaintiff called Dr. Canino and complained of increasingly intense pain along with nausea. Relying on Dr. Ruggiero’s examination, Dr. Canino advised plaintiff to lie down, explaining that the pain was likely related to her sciatic nerve and the nausea probably resulted from something she ate for lunch. Less than two hours later, while sitting on the toilet, plaintiff gave birth to one of the twins. Still linked to the fetus by the umbilical cord, she went by ambulance to the hospital, where she delivered the second twin. Neither twin survived.
Other doctors later diagnosed plaintiff as having an “incompetent cervix.” In a subsequent pregnancy, she underwent a cerclage procedure to suture her cervix, and thereby prevent the premature expulsion of the fetus. Plaintiff delivered a six-week premature daughter the following year.
The Faheys brought this action for medical malpractice asserting that defendants negligently failed to diagnose and treat plaintiffs cervical condition. Supreme Court granted defendants’ motion for summary judgment dismissing the complaint. With one Justice dissenting, the Appellate Division, also citing Tebbutt, affirmed on the ground that defendants’ alleged malpractice did not cause the mother an independent physical injury.
We now reverse the Appellate Division orders in both cases.[1]
IL
In Tebbutt v Virostek (65 NY2d 931 [1985]), we held that a mother could not recover for emotional injuries when medical malpractice caused a stillbirth or miscarriage, absent a showing that she suffered a physical injury that was both distinct from that suffered by the fetus and not a normal incident of childbirth. Plaintiffs assert that Tebbutt is arbitrary and unfair, and should be overturned.
Tebbutt reflected our longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury. Its holding was in keeping with our view that tort liability is not a panacea capable of redressing every substantial wrong. Although these concerns weigh heavily on us today, we are no longer able to defend Tebbutt’s logic or reasoning.
*154 As its dissenters recognized, the rule articulated in Tebbutt fits uncomfortably into our tort jurisprudence. Infants who are injured in the womb and survive the pregnancy may maintain causes of action against tortfeasors responsible for their injuries (see Woods v Lancet, 303 NY 349 [1951]). Further, a pregnant mother may sue for any injury she suffers independently. A parent, however, cannot bring a cause of action for wrongful death when a pregnancy terminates in miscarriage or stillbirth (see Endresz v Friedberg, 24 NY2d 478 [1969]).
Injected into this common-law framework, Tebbutt engendered a peculiar result: it exposed medical caregivers to malpractice liability for in útero injuries when the fetus survived, but immunized them against any liability when their malpractice caused a miscarriage or stillbirth. In categorically denying recovery to a narrow, but indisputably aggrieved, class of plaintiffs, Tebbutt is at odds with the spirit and direction of our decisional law in this area. The Endresz court, for example, justified its holding— barring parents from suing in wrongful death on behalf of an unborn child—in part on the assumption that parents would have some legal recourse for a miscarriage or stillbirth resulting from negligent conduct (id. at 486).[2]
On its own terms, Tebbutt may make formal sense, but it created a logical gap in which the fetus is consigned to a state of “juridical limbo” (65 NY2d at 933 [Jasen, J., dissenting]). It is time to fill the gap. If the fetus cannot bring suit, “it must follow in the eyes of the law that any injury here was done to the mother” (65 NY2d at 940 [Kaye, J., dissenting]).
Defendants maintain that Tebbutt states a sensible rule, one worth preserving, because the defendant physician in that case did not violate a duty to the expectant mother. We are not persuaded. In Ferrara v Bernstein (81 NY2d 895 [1993]), we permitted a plaintiff to recover damages for emotional distress when she miscarried, following an unsuccessful abortion, on the ground that the treating physician violated a duty of care to his patient. Defendants would have us distinguish Ferrara, arguing that, in the cases before us, their alleged conduct injured only the fetuses, and, accordingly, they did not violate a duty to the expectant mothers. Defendants’ reasoning is tortured. Although, *155 in treating a pregnancy, medical professionals owe a duty of care to the developing fetus (as we impliedly recognized in Woods v Lancet, 303 NY 349 [1951]), they surely owe a duty of reasonable care to the expectant mother, who is, after all, the patient. Because the health of the mother and fetus are linked, we will not force them into legalistic pigeonholes.[3]
We therefore hold that, even in the absence of an independent injury, medical malpractice resulting in miscarriage or stillbirth should be construed as a violation of a duty of care to the expectant mother, entitling her to damages for emotional distress.[4]
*156 Our dissenting colleague has expressed concern over the possible repercussions of what she concedes to be a “modest” advance in our tort jurisprudence. Significantly, on this appeal, no one from any quarter came forward to support any such concerns. While we are well aware of the importance of precedent, Tebbutt has failed to withstand the cold light of logic and experience. To be sure, line drawing is often an inevitable element of the common-law process, but the imperative to define the scope of a duty—the need to draw difficult distinctions— does not justify our clinging to a line that has proved indefensible.
Accordingly, the orders of the Appellate Division should be reversed, with costs, and the cases remitted to Supreme Court for further proceedings consistent with this opinion.

. We take no position on the ultimate merits of either case. We note only that, on the records before us, the cases were sufficient to withstand respectively a motion for a trial order of dismissal and a motion for summary judgment.

. In Endresz, an automobile accident both caused injuries to the mother and resulted in her miscarrying. The Court reasoned that no cause of action should lie in wrongful death because the damages recoverable by the mother for her independent physical injuries would “afford ample redress for the wrong done” (id.).

. The treating physician owes no duty of care to the expectant father. It of course remains true that, where the mother has a cause of action, her husband may recover for loss of services and consortium if the facts support such a claim.

. In rejecting Tebbutt, we recognize that a majority of jurisdictions permit some form of recovery for negligently caused stillbirths or miscarriages (see e.g. Eich v Town of Gulf Shores, 293 Ala 95, 300 So 2d 354 [1974]; Summer-field v Superior Ct. In & For Maricopa County, 144 Ariz 467, 698 P2d 712 [1985]; Gorke v Le Clerc, 23 Conn Supp 256, 181 A2d 448 [Super Ct, Hartford County 1962]; Worgan v Greggo & Ferrara, Inc., 50 Del 258, 128 A2d 557 [Super Ct, New Castle County 1956]; Simmons v Howard Univ., 323 F Supp 529 [D DC 1971]; Shirley v Bacon, 154 Ga App 203, 267 SE2d 809 [1980]; Seef v Sutkus, 205 111 App 3d 312, 562 NE2d 606 [1st Dist 1990]; Bolin v Wingert, 764 NE2d 201 [Ind 2002]; Hale v Manion, 189 Kan 143, 368 P2d 1 [1962]; Mitchell v Couch, 285 SW2d 901 [Ky 1955]; State, TJse of Odham v Sherman, 234 Md 179, 198 A2d 71 [1964]; Wascom v American Indem. Corp., 383 So 2d 1037 [La App, 1st Cir 1980]; Mone v Greyhound Lines, Inc., 368 Mass 354, 331 NE2d 916 [1975]; O’Neill v Morse, 385 Mich 130, 188 NW2d 785 [1971]; Verkennes v Corniea, 229 Minn 365, 38 NW2d 838 [1949]; Rainey v Horn, 221 Miss 269, 72 So 2d 434 [1954]; Strzelczyk v Jett, 264 Mont 153, 870 P2d 730 [1994]; White v Yup, 85 Nev 527, 458 P2d 617 [1969]; Poliquin v MacDonald, 101 NH 104, 135 A2d 249 [1957]; Giardina v Bennett, 111 NJ 412, 545 A2d 139 [1988]; Salazar v St. Vincent Hosp., 95 NM 150, 619 P2d 826 [Ct App 1980]; Hopkins v McBane, 427 NW2d 85 [ND 1988]; Werling v Sandy, 17 Ohio St 3d 45, 476 NE2d 1053 [1985]; Evans v Olson, 1976 OK 64, 550 P2d 924 [1976]; Libbee v Permanente Clinic, 268 Or 258, 518 P2d 636 [1974]; Amadio v Levin, 509 Pa 199, 501 A2d 1085 [1985]; Presley v Newport Hosp., 117 RI 177, 365 A2d 748 [1976]; Fowler v Woodward, 244 SC 608, 138 SE2d 42 [1964]; Parvin v Dean, 7 SW3d 264 [Tex Ct App 1999]; Vaillancourt v Medical Ctr. Hosp. of Vt., Inc., 139 Vt 138, 425 A2d 92 [1980]; Moen v Hanson, 85 Wash 2d 597, 537 P2d 266 [1975]; Baldwin v Butcher, 155 W Va 431, 184 SE2d 428 [1971]; Kwaterski v State Farm Mut. Auto. Ins. Co., 34 Wis 2d 14, 148 NW2d 107 [1967]). Unlike most of these jurisdictions, however, we limit a mother’s recovery only to damages for the emotional distress attending a stillbirth or miscarriage caused by medical malpractice. We do not depart from our holding in Endresz v Friedberg (24 NY2d 478 [1969]) barring wrongful death actions under these circumstances.