[778 NYS2d 98]

JO'ELL SHEPPARD-MOBLEY et al., Appellants, v LESLIE A. KING et al., Respondents.

Second Department, June 7, 2004

**APPEARANCES OF COUNSEL**

*Davidson & Cohen, P.C.*, Rockville Centre (*Ira Cooper* of counsel), for appellants.

*McAloon & Friedman, P.C.*, New York City (*Lawrence W. Mumm* and *Timothy J. O'Shaughnessy* of counsel), for Leslie A. King and another, respondents.

*Marulli & Associates, P.C.*, New York City (*Lisa Gokhulsingh* and *John Tomaszewski* of counsel), for Ira J. Spector, respondent.

*Aaronson, Rappaport, Feinstein & Deutsch, LLP*, New York City (*Steven C. Mandell* of counsel), for Sheila Kumari-Subaiya and another, respondents.

**OPINION OF THE COURT**

CRANE, J.

This is an action, inter alia, to recover damages for alleged multiple acts of medical malpractice perpetrated upon the plaintiff Karen Sheppard (hereinafter the mother) and her then unborn child, the infant plaintiff, Jo'ell Sheppard-Mobley.

In July 1999 the mother sought treatment for abdominal discomfort from her obstetrician, the defendant Dr. Leslie A. King, who was employed by the defendant Obstetrical & Gynecological Services of Rockville Centre (hereinafter OGSRC). Dr. King examined the mother, performed a sonogram, and determined that she was pregnant. However, Dr. King advised the mother that due to the presence of fibroid tumors in her uterus, which could not be surgically removed while she was pregnant, the mother would probably be unable to carry a child to term. Dr. King thus recommended that the mother undergo an abortion.

Dr. King referred the mother to the defendant Dr. Ira J. Spector, a fertility specialist. Dr. Spector examined the mother, and also advised her that the fibroids might abort the pregnancy. He recommended that she not undergo a surgical abortion because the fibroids would likely complicate the procedure. Rather, Dr. Spector opined that the pregnancy should be terminated via injections of a drug, methotrexate, which breaks down fetal tissue.

The mother returned to Dr. King, who, after consulting with Dr. Spector, administered the methotrexate. Believing the pregnancy to have been terminated but concerned about the absence of fetal discharge, the mother later saw the defendant Dr. Sheila Kumari-Subaiya, a radiologist and owner of the defendant Promedica Imaging, P.C. (hereinafter Promedica). Dr. Kumari-Subaiya performed a sonogram and advised the mother that there was no fetal heartbeat.

However, as would later be deduced, Dr. King allegedly gave the mother too small a dose of methotrexate. As a result, the pregnancy was not terminated. When the mother's doctors finally discovered that the mother was still pregnant, but was likely now carrying a compromised fetus, the mother grappled with emotionally painful choices, including whether to undergo an out-of-state late-term abortion. Instead, and by this point lacking any faith in her doctors, and fearing for her life, the mother gave birth to the infant plaintiff, who is afflicted with serious defects.

This action was commenced on behalf of the infant plaintiff, the mother, and Lemuel Mobley (hereinafter the father) against the aforementioned health care providers. The complaint contains seven causes of action. It alleges physical injuries to the infant plaintiff caused by the medical malpractice of Dr. King and OGSRC, Dr. Spector, Dr. Kumari-Subaiya, and Promedica. The complaint seeks to recover damages for loss of services and medical expenses as against all defendants on behalf of the father and the mother. It further alleges on behalf of the mother physical and emotional injuries as against all defendants caused by their medical malpractice. Finally, it pleads on behalf of the mother lack of informed consent as against Dr. King, OGSRC, and Dr. Spector.

The defendants all moved to dismiss the complaint in part pursuant to CPLR 3211 (a) (7) or for partial summary judgment pursuant to CPLR 3212. Invoking the rule that there may be no recovery for "wrongful life," they sought dismissal of the infant plaintiff's medical malpractice claims (i.e., causes of action one through three in their entirety), both parents' loss of services claims (i.e., causes of action four and five, in part), and the mother's medical malpractice claim (i.e., the sixth cause of action) on the ground that the mother suffered no physical injuries and she may not recover for mental anguish as a result of alleged malpractice committed upon her child.

By order dated December 13, 2002, the Supreme Court granted the motions; so much of the fourth and fifth causes of action as sought recovery for the parents' extraordinary medical costs were not dismissed, nor was the seventh cause of action alleging the mother's lack of informed consent. The plaintiffs and the defendants Dr. Kumari-Subaiya and Promedica subsequently entered into a stipulation withdrawing the infant plaintiff's medical malpractice claims asserted against them in the third cause of action, as well as so much of the seventh cause of action as alleged lack of informed consent against them, and limited the issue to whether the mother had a viable claim to recover damages for emotional distress against Dr. Kumari-Subaiya and Promedica.* During oral argument of a separate appeal from an order of the same court dated September 13,

---

* The defendants Dr. Kumari-Subaiya and Promedica do not contend that they are free of liability on the basis that the "abnormality of the child [from which the mother's claim for emotional damages in part stems] . . . was *not caused* by [their alleged negligence]" (*Tebbutt v Virostek*, 65 NY2d 931, 939 [1985] [dissent]).

2002, denying the motion of Dr. Spector for summary judgment in this case, the plaintiffs conceded that Dr. Spector was entitled to summary judgment dismissing so much of the seventh cause of action as sought to recover damages against him based upon lack of informed consent (*see Sheppard-Mobley v King,* 8 AD3d 358 [2004] [decided herewith]). The arguments raised by Dr. Spector on the appeal from the order dated September 13, 2002, are different from the arguments he raises on this appeal.

The Supreme Court provided no rationale for its determination, and thus, we can only assume that it construed the complaint narrowly to conclude that the gravamen thereof was a noncognizable claim for wrongful life. We do not read the complaint in a similarly narrow manner, as there are other viable claims alleged. Thus, the defendants' motions should have been denied in part.

On a motion to dismiss based upon failure to state a cause of action pursuant to CPLR 3211 (a) (7), the court must assume the truth of the allegations in the pleading, "resolve all inferences which reasonably flow therefrom in favor of the pleader" (*Sanders v Winship,* 57 NY2d 391, 394 [1982]), and "determine simply whether the facts alleged fit within any cognizable legal theory" (*Morone v Morone,* 50 NY2d 481, 484 [1980]).

On a motion for summary judgment pursuant to CPLR 3212, the proponent must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*see Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853 [1985]). Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers (*see Alvarez v Prospect Hosp., supra; Winegrad v New York Univ. Med. Ctr., supra*).

█ No cause of action may be maintained on behalf of an infant plaintiff for "wrongful life," i.e., that he or she would never have been born but for the negligence of the defendants (*see Alquijay v St. Luke's-Roosevelt Hosp. Ctr.,* 63 NY2d 978, 979 [1984]; *Becker v Schwartz,* 46 NY2d 401, 411-412 [1978]; *Nieves v Montefiore Med. Ctr.,* 305 AD2d 161, 163 [2003]; *Spano v Bertocci,* 299 AD2d 335, 337 [2002]; *Keselman v Kingsboro Med. Group,* 156 AD2d 334 [1989]). Contrary to the defendants' arguments, however, neither the complaint nor the bill of particulars limits the infant plaintiff's action to claims for wrongful life based upon the failure to inject a sufficient dose of

methotrexate to abort the fetus. Rather, the first two causes of action seek recovery for personal injuries sustained by the infant plaintiff in utero as a result of the defendants' malpractice in erroneously diagnosing and treating the mother, i.e., in wrongly advising her that she would be unable to carry a fetus to term and thus in advising her to undergo an abortion via the administration of methotrexate.

The plaintiffs argue that, had the defendants not been negligent in their advice regarding the mother's ability to carry the fetus to term and in advising her to undergo a chemical abortion, the mother would have given birth to a healthy child. Thus, the infant plaintiff claims that the defendants breached the duty of care they owed to him when they gave the mother this improper advice. The complaint also alleges that the defendants were negligent in the manner in which they failed adequately to diagnose, treat, observe, manage, and care for the mother during her pregnancy. Furthermore, the bill of particulars alleges that the very administration of methotrexate was "contraindicated." Clearly such allegations undermine the conclusion, embraced by the Supreme Court, that this is a wrongful life claim which cannot withstand the controlling authority of *Becker v Schwartz* (*supra*) and *Alquijay v St. Luke's-Roosevelt Hosp. Ctr.* (*supra*).

In *Woods v Lancet* (303 NY 349, 351 [1951]), the Court of Appeals recognized, for the first time, a cause of action on behalf of a later-born child for injuries sustained in utero resulting from a tort committed during pregnancy (*see Broadnax v Gonzalez,* 2 NY3d 148 [2004]). It is now beyond dispute that in a case of negligence resulting in prenatal injuries, the mother and the child in utero may each be directly injured and are each owed a duty independent of the other (*see Broadnax v Gonzalez, supra; Nieves v Montefiore Med. Ctr., supra; Spano v Bertocci, supra; Moreta v New York City Health & Hosps. Corp.,* 238 AD2d 149 [1997]; *Hughson v St. Francis Hosp. of Port Jervis,* 92 AD2d 131, 132 [1983]). The infant may recover damages for medical malpractice committed while en ventre sa mere (*see Broadnax v Gonzalez, supra; LaBello v Albany Med. Ctr. Hosp.,* 85 NY2d 701, 704-705 [1995]; *Endresz v Friedberg,* 24 NY2d 478, 485-486 [1969]). This rule is no less applicable in the instant case notwithstanding that the complaint and bill of particulars, in part, complain of negligence in the administration of an abortive drug; inconsistent pleading is permissible (*see* CPLR 3014; *Cohn v Lionel Corp.,* 21 NY2d 559 [1968]).

Thus, the first and second causes of action in the complaint sufficiently state claims on behalf of the infant plaintiff to recover damages for medical malpractice, except to the extent that they rest on allegations of wrongful life. Such wrongful life claims shall remain dismissed. These claims, to the extent they rest on a theory of wrongful life, fail to state a cause of action and should be severed from the causes of action to which they are attached (*see* CPLR 3212 [e]; Siegel, NY Prac § 285, at 446 [3d ed]). However, the defendants failed to submit any evidence respecting the legally sufficient claims within these causes of action to eliminate the triable issues of fact presented here, including whether the defendants negligently advised the mother that she could not carry a fetus to term.

■ The sixth cause of action is likewise sufficient and the defendants failed to establish their entitlement to judgment as a matter of law. In this cause of action, the mother alleges that she suffered emotional distress and mental anguish as a result of the alleged malpractice committed upon both her and her child. The defendants, relying on the holding in *Tebbutt v Virostek* (65 NY2d 931 [1985]) and reading the complaint very narrowly, argue that, in the absence of physical injury to the mother, she may not recover damages for any mental distress or emotional disturbances she may have suffered as a result of the injury inflicted upon the infant plaintiff. Although *Tebbutt v Virostek* (*supra*) involved the stillbirth of a child, this same rule applied with equal force to bar claims of a mother's emotional disturbance suffered as a result of the birth of her child in an impaired state (*see Vaccaro v Squibb Corp.*, 52 NY2d 809 [1980]; *Howard v Lecher*, 42 NY2d 109, 112-113 [1977]; *Becker v Schwartz, supra* at 413; *Burgess v Miller*, 124 AD2d 692, 693 [1986]).

During the pendency of this appeal, the Court of Appeals implicitly overruled *Tebbutt v Virostek* (*supra*) and held that, "even in the absence of an independent injury, medical malpractice resulting in miscarriage or stillbirth should be construed as a violation of a duty of care to the expectant mother, entitling her to damages for emotional distress" (*Broadnax v Gonzalez, supra* at 155). Thus, a mother may now assert a claim sounding in medical malpractice to recover damages for emotional distress suffered as a result of a miscarriage or the stillbirth of a child, with or without the mother having sustained independent physical injuries.

The Court of Appeals succinctly stated the rationale for its holding in *Broadnax v Gonzalez* (*supra*): "Although, in treating

a pregnancy, medical professionals owe a duty of care to the developing fetus (as we impliedly recognized in *Woods v Lancet,* 303 NY 349 [1951]), they surely owe a duty of reasonable care to the expectant mother, who is, after all, the patient. Because the health of the mother and fetus are linked, we will not force them into legalistic pigeonholes" (*Broadnax v Gonzalez, supra* at 154-155).

While both *Tebbutt v Virostek (supra)* and *Broadnax v Gonzalez (supra)* involved the stillbirth or miscarriage of a child, we discern no reasonable basis to limit the *Broadnax* holding to cases of stillbirth and miscarriage. The duty owed to the mother remains the same whether the fetus is stillborn or is born in an impaired state. The duty is not vitiated by virtue of the live birth of a child in a severely impaired state. In addition, the cases prior to *Broadnax* drew no distinction between miscarriage and stillbirth on the one hand, and the live birth of a fetus in an impaired state on the other hand, when they prohibited a mother's recovery for damages for emotional distress in the absence of independent physical injury to the mother (*see Lynch v Bay Ridge Obstetrical & Gynecological Assoc.,* 72 NY2d 632, 637 [1988] [dissent]; *Martinez v Long Is. Jewish Hillside Med. Ctr.,* 70 NY2d 697, 699 [1987]; *Bovsun v Sanperi,* 61 NY2d 219, 223-224 [1984]; *Burgess v Miller, supra* at 693).

To justify the denial of damages for the mother's emotional distress for the stillbirth of the infant in *Tebbutt v Virostek (supra)*, the Court relied, in part, on the earlier holding of *Vaccaro v Squibb Corp. (supra)*. The *Vaccaro* case, however, involved a child born in a severely-impaired state as a result of the mother's ingestion of medication prescribed by her obstetrician. The Court in *Vaccaro v Squibb Corp. (supra)* denied the mother recovery for damages for emotional distress suffered as the result of the birth of her impaired child in the absence of any claim that the mother suffered independent physical injuries. In overruling *Tebbutt v Virostek (supra)*, the Court in *Broadnax v Gonzalez (supra* at 153) stated that it was "no longer able to defend *Tebbutt's* logic or reasoning." Thus, it strongly appears that the Court of Appeals has repealed the independent physical injury requirement for all three categories of birth trauma.

The mother also alleges in the sixth cause of action that she suffered emotional harm not only as a result of her giving birth to an impaired child but also for her own prebirth trauma, again stemming from the defendants' breach of their duties owed directly to her. Specifically, the mother claims that she was told

she should have an abortion because she could not carry a child to term. In reliance upon this diagnosis, the mother submitted to a chemical abortion; she was mistakenly advised that it had succeeded when, in fact, it had failed. Then, she was faced with emotionally-wrenching decisions, including whether to seek an out-of-state late-term abortion, or to try to give birth to a child likely to be deformed due to fetal methotrexate syndrome. Ultimately, the mother abandoned her plan to abort and carried the fetus to term. The mother alleges that she suffered physical injury as a result of the methotrexate injections, and that she suffered emotional injuries stemming from the defendants' failure properly to diagnose and advise her of her condition.

Before *Broadnax v Gonzalez (supra),* damages for emotional harm could be recovered even in the absence of physical injury "when there is a duty owed by defendant to plaintiff, [and a] breach of that duty result[s] directly in emotional harm" (*Perry-Rogers v Obasaju,* 282 AD2d 231, 231 [2001], quoting *Kennedy v McKesson Co.,* 58 NY2d 500, 504 [1983]; *see Broadnax v Gonzalez, supra; Ferrara v Bernstein,* 81 NY2d 895, 898 [1993]; *Lynch v Bay Ridge Obstetrical & Gynecological Assoc., supra* at 635-636; *Martinez v Long Is. Jewish Hillside Med. Ctr., supra; Howard v Lecher, supra; Fasano v Nash,* 282 AD2d 277 [2001]; *Prado v Catholic Med. Ctr. of Brooklyn & Queens,* 145 AD2d 614, 615 [1988]; *Landon v New York Hosp.,* 101 AD2d 489, 490 [1984], *affd* 65 NY2d 639 [1985]; *Shanahan v Orenstein,* 52 AD2d 164 [1976]). Thus, the mother has sufficiently stated a cognizable claim to recover damages for emotional distress in the sixth cause of action for the breach of duty owed directly to her, as well as damages for emotional distress, even in the absence of physical injury, for giving birth to an impaired child (*see Broadnax v Gonzalez, supra; Ferrara v Bernstein, supra*).

The defendants on their respective motions and application failed to come forward with any evidence in the first instance to establish that the mother did not suffer emotional injuries as a result of the defendants' alleged malpractice. Therefore, the sixth cause of action must be reinstated in its entirety.

On the Court's own motion, the notice of appeal from so much of the order dated December 13, 2002, as granted those branches of the oral application of the defendant Ira J. Spector which were to dismiss so much of the first and second causes of action as asserted a claim by the infant plaintiff, Jo'ell Sheppard-Mobley, to recover damages for medical malpractice, and to dismiss the sixth cause of action asserted by the plaintiff Karen

Sheppard is treated as an application for leave to appeal from that part of the order, and leave to appeal is granted (*see* CPLR 5701 [c]). The order is modified, on the law, by (1) deleting the provisions thereof granting those branches of the motion of the defendants Leslie A. King and Obstetrical & Gynecological Services of Rockville Centre, and the oral application of the defendant Ira J. Spector, pursuant to CPLR 3211 (a) (7) and 3212, which were to dismiss the first and second causes of action in their entirety and substituting therefor a provision granting those branches of the motion and oral application which were to dismiss so much of the first and second causes of action as assert a claim by the infant plaintiff to recover damages for "wrongful life" and otherwise denying those branches of the motion and oral application, and (2) deleting the provisions thereof granting those branches of the separate motions of the defendants Leslie A. King and Obstetrical & Gynecological Services of Rockville Centre, and the defendants Sheila Kumari-Subaiya and Promedica Imaging, P.C., and the oral application of the defendant Ira J. Spector, which were to dismiss the sixth cause of action in its entirety and substituting therefor a provision denying those branches of the motions and oral application, and the infant plaintiff's name is restored to the caption of the case; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiffs payable by the defendants appearing separately and filing separate briefs.

FLORIO, J.P., S. MILLER and RIVERA, JJ., concur.

Ordered that on the Court's own motion, the notice of appeal from so much of the order dated December 13, 2002, as granted those branches of the oral application of the defendant Ira J. Spector which were to dismiss so much of the first and second causes of action as asserted a claim by the infant plaintiff, Jo'ell Sheppard-Mobley, to recover damages for medical malpractice, and to dismiss the sixth cause of action asserted by the plaintiff Karen Sheppard is treated as an application for leave to appeal from that part of the order, and leave to appeal is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is modified, on the law, by (1) deleting the provisions thereof granting those branches of the motion of the defendants Leslie A. King and Obstetrical & Gynecological Services of Rockville Centre, and the oral application of the defendant Ira J. Spector, pursuant to CPLR 3211 (a) (7) and 3212, which were to dismiss the first and second causes of action in their entirety and substituting therefor a provision granting

those branches of the motion and oral application which were to dismiss so much of the first and second causes of action as assert a claim by the infant plaintiff to recover damages for "wrongful life" and otherwise denying those branches of the motion and oral application, and (2) deleting the provisions thereof granting those branches of the separate motions of the defendants Leslie A. King and Obstetrical & Gynecological Services of Rockville Centre, and the defendants Sheila Kumari-Subaiya and Promedica Imaging, P.C., and the oral application of the defendant Ira J. Spector, which were to dismiss the sixth cause of action in its entirety and substituting therefor a provision denying those branches of the motions and oral application, and the infant plaintiff's name is restored to the caption of the case; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiffs payable by the defendants appearing separately and filing separate briefs.