OPINION OF THE COURT
Eileen Bransten, J.
Pursuant to CPLR 3025 (b), plaintiff Jose Santos, as administrator of the estate of Daudi Santos, deceased infant, and Mr. Santos, individually, moves for permission to file and serve a supplemental summons and amended complaint adding Dea Alves-Santos as a plaintiff. Defendants SL Vincent’s Hospital and Medical Center of New York, Rita Fischer, M.D. and Po Ching Fong, M.D. oppose this motion.[1]
Background
On December 16, 1999, Mrs. Santos gave birth to Daudi at St. Vincent’s. (Plaintiffs affirmation in support of motion [aff] 1i 3.) Daudi, a full-term baby, was born alive. (Defendants’ affirmation in opposition [opp], exhibit B, verified complaint 1Í 31.) Shortly after the delivery, a nurse allegedly negligently used a vacuum extractor on Daudi, which deprived him of oxygen and caused his death. (Aff 1Í 3.)
On January 14, 2002, plaintiff commenced this action claiming that defendants negligently caused Daudi to asphyxiate and die. (Id.) Mrs. Santos was originally a party to the action and claimed pain and suffering due to defendants’ negligence. (Opp 113.)
On December 19, 2002, the court granted plaintiff leave to amend his complaint to include Jose Santos, as administrator of Daudi’s estate. (Aff 1i 4.) Mrs. Santos also voluntarily discontinued her claims because she had no individual claims for pain and suffering. (Id.)
Plaintiff now moves for leave to amend his complaint to add Mrs. Santos as a plaintiff based on the Court of Appeals’ recent decision in Broadnax v Gonzalez (2 NY3d 148 [2004]). He argues that he should be permitted to add Mrs. Santos as a plaintiff even though the statute of limitations has expired because her claim relates back to the original filing date under CPLR 203 *195 (f). (Plaintiffs reply [reply] 1f 13.) Furthermore, he argues that Mrs. Santos is not barred from bringing this action even though she previously discontinued her claims because waiver is the relinquishment of a known right and Mrs. Santos did not have a right to bring this suit — Broadnax had not yet been decided— when she discontinued her claims. (Id. 1i 10.)
Defendants oppose this motion, arguing that Broadnax does not apply because Daudi was born alive. (Opp 111! 4, 5.) Further, defendants urge that Broadnax and its progeny should not apply retroactively to cases filed before it was decided. (Opp 114.) Additionally, they argue that Mrs. Santos waived any claims that she might have had in this action when she voluntarily discontinued them. (Opp 1i 3b.) Finally, defendants contend that Mrs. Santos’s claim is barred by the statute of limitations. (Id.)
Analysis
With regard to prenatal medical treatment, medical professionals owe a separate duty of care to the mother and the developing fetus. (Woods v Lancet, 303 NY 349, 357 [1951].) Thus, when a doctor negligently causes a fetus to suffer permanent injuries, the infant, if later born alive, has a cause of action against the doctor. (Id.) Likewise, if a doctor commits medical malpractice against the mother’s person that causes her physical injury, she has a separate cause of action against the doctor. (Endresz v Friedberg, 24 NY2d 478, 484 [1969].)
Until 2004, however, neither a mother nor her fetus had a cause of action if a doctor negligently caused a miscarriage or stillbirth unless the mother sustained actual physical injury. (Tebbutt v Virostek, 65 NY2d 931 [1985].) For example, in Fahey v Canino (2002 NY Slip Op 40038[U] [Sup Ct, Broome County 2002]), Supreme Court held that a mother had no right to recover for pain and suffering after delivering an 18-week-old fetus into her own hands while sitting on the toilet because she suffered no permanent injuries and her emotional distress was only out of regard for her fetus. (Id. at *1.)
In 2004, the Court of Appeals considered Fahey and a similar case in Broadnax v Gonzalez (2 NY3d 148 [2004]). Reversing the courts below, the Court of Appeals held for the first time that, even in the absence of independent physical injury, a mother can recover against a negligent doctor for the emotional *196 distress of miscarrying or having a stillbirth.[2] (Id. at 156.) The Court reasoned, quoting Judge Kaye’s dissent in Tebbutt v Virostek (65 NY2d at 940), that if “the fetus cannot bring suit, ‘it must follow in the eyes of the law that any injury here was done to the mother.’ ” (Id. at 154.)
Cases following Broadnax have slightly expanded this rule to authorize recovery for a mother’s emotional distress not only when fetuses die in útero, but also in cases in which an infant was born severely impaired because of negligence inflicted upon the fetus while in útero.
For example, in Sheppard-Mobley v King (10 AD3d 70 [2d Dept 2004]), defendants attempted to terminate plaintiff’s pregnancy with methotrexate, but did not administer enough of the drug. As a result, plaintiff gave birth to an infant with serious birth defects. Plaintiff alleged that defendants negligently managed and cared for her during her pregnancy and that their failures caused her pain and suffering. The Court held that the “duty owed to the mother remains the same whether the fetus is stillborn or is born in an impaired state. The duty is not vitiated by virtue of the live birth of a child in a severely impaired state.” (Id. at 77.)
Likewise, in Stuart v New York City Health & Hosps. Corp. (7 Misc 3d 225 [Sup Ct, Queens County 2005]), plaintiffs claimed that defendant doctors negligently provided medical care to the mother while she was pregnant and, as a result, her child was born with brain damage and cerebral palsy. (Id. at 226.) The court permitted plaintiffs to amend their complaint to add a cause of action for the mother, stating that the purpose of Broadnax was “to extend the duty of care medical professionals owe to the expectant mother, as a patient, whose health is linked to the fetus.” (Id. at 228.)
Plaintiff argues that he should be permitted to add Mrs. Santos as a plaintiff because now she has a cause of action under Broadnax. But here, unlike the fetuses in Broadnax, Daudi was *197 born healthy and alive. There was no miscarriage or stillbirth. Defendants allegedly injured Daudi shortly after he was born, not when he was in útero. Therefore, this case is also readily distinguishable from Sheppard-Mobley and Stuart, in which defendants’ negligence was committed upon the mother’s person during her pregnancy and caused harm to the infant in útero. In the end, Daudi’s injuries were not caused while Mrs. Santos was carrying him. The alleged negligence was inflicted independent of Mrs. Santos; it was inflicted upon Daudi.
Instead, this case is much more analogous to cases in which parents have witnessed harm or death to their children.
For example, in Shaw v QC-Medi N.Y., Inc. (10 AD3d 120 [4th Dept 2004]), plaintiffs daughter suffocated on her ventilator for several minutes before being rushed to the hospital where she recovered. (Id.) Plaintiff mother witnessed this event, and claimed that defendants’ failure to attend to her daughter caused her great anxiety and stress, and exacerbated her diabetes. (Id.) The Appellate Division held that the mother did not have a cause of action against defendants because defendants provided the care to her daughter, not her. (Id.) It concluded that “[u]nder the common law, defendants have no duty to protect plaintiffs from emotional injuries sustained as the result of witnessing the allegedly negligent care provided to decedent by defendants ... To permit liability under these circumstances would create untold numbers of claims by third parties.” (Id. at 123-125.)
Similarly, in Osborn v Andrus Pavilion of St. John’s Riverside Hosp. (100 AD2d 840 [2d Dept 1984]), plaintiff mother wanted to recover for her emotional distress, which allegedly resulted from defendants’ negligence in causing the death of her six-year-old infant. The Court dismissed the mother’s action, stating that defendants did not breach any duty of reasonable care owed to her because they allegedly hurt the infant, not her. (Id. at 841.)
Finally, in Landon v New York Hosp. (101 AD2d 489 [1st Dept 1984]), parents brought a medical malpractice action against defendants for their own pain and suffering, alleging that they suffered fear of contracting meningitis as a result of defendants’ alleged failure to timely diagnose their child with the disease. The Appellate Division held that the parents had no cause of action because defendants treated the child, not the parents. Specifically, the Court stated, “It has repeatedly been held that there is no recovery in this State for psychic or emotional *198 injuries suffered as a result of observing injury inflicted upon one’s child.” {Id. at 490.)
In this case, Mrs. Santos is seeking recovery because she allegedly watched defendants improperly suction Daudi, which caused him to asphyxiate. Although defendants previously treated Mrs. Santos in pregnancy, it was their care of Daudi after his birth that allegedly caused his death. Defendants are not accused of causing Daudi’s death through their negligent treatment of Mrs. Santos while he was in útero.
This distinction is an important one. New York case law establishes that in analyzing a mother’s ability to recover for emotional distress based on injuries to her child, courts must draw a line between injuries caused in útero and those inflicted after the child was born. Otherwise, courts will open the gates of recovery for mothers to recover anytime something happens to their children.
“In any case of medical malpractice, it is foreseeable that many individuals at various degrees of closeness to the directly injured party will suffer emotional distress. If such foreseeability is held to create or define a duty as a foundation of liability, it may well open our courts to an inundation of claims for emotional injuries extending far afield of the epicenter of the injury.” (Landon v New York Hosp., 101 AD2d at 491.)
Allowing mothers to recover for emotional distress based on their children’s injuries only when they are caused in útero is a sound rule. After all, injuries inflicted in útero are inflicted on a fetus directly through its mother. After birth, however, the child has its own separate existence and its injuries are independent. They are not effected through its mother.
In this case, defendants’ alleged medical malpractice was committed upon the child and the mother — who was not a conduit for the injuries — should not be permitted to recover merely based on her relationship to her child. Indeed, the Court in Broadnax held that the treating physician owes no duty of care to the expectant father {see, Broadnax v Gonzalez, 2 NY3d at 155 n 3), and under circumstances such as these there is no basis to distinguish between a mother and a father.
Since Daudi was injured after birth and not in útero, Mrs. Santos has no cause of action and her request to be added as a plaintiff must be denied. Because Mrs. Santos has no cause of *199 action, this court need not consider defendants’ statute of limitations and waiver objections.
Accordingly, it is ordered that plaintiffs motion to amend his complaint is denied.

. Pursuant to a stipulation of the parties, plaintiff discontinued against the Center and Dr. Corona. Therefore, they are no longer parties to this action. (Aff 11 5.)

. It is unclear whether the fetus in Fahey was stillborn or alive. The Court of Appeals makes no mention of a live birth and, in its holding, twice uses the phrase “miscarriage or stillbirth.” (See, Broadnax v Gonzalez, 2 NY3d at 151, 155.) Supreme Court in Fahey, however, stated that plaintiff delivered a “live, 18-week-old fetus,” who later died. (Fahey v Canino, 2002 NY Slip Op 40038[U], *1 [2002].) Because the Court of Appeals does not specifically address a Uve birth, the bench and bar can only assume, based on the Court’s explicit language, that its holding is Umited to situations involving miscarriage and stillbirth. (See, Kotler v Swersky, 10 AD3d 350, 351-352 [2d Dept 2004] [applying Broadnax to case involving stillbirth].)